### BUCHANAN *v.* LITCHFIELD.

1. The twelfth section of the ninth article of the Constitution of Illinois, adopted in 1870, declares that "no county, city, township, school district, or other municipal corporation, shall be allowed to become indebted in any manner, or for any purpose, to an amount, including existing indebtedness, in the aggregate exceeding five per centum on the value of the taxable property therein, to be ascertained by the last assessment for State and county taxes previous to the incurring of such indebtedness." Under a statute of that State, approved April 15, 1873, authorizing cities to construct waterworks, and for that purpose to appropriate and borrow money, and levy and collect a general tax in the same manner as other municipal taxes may be levied and collected, the city of Litchfield, by her ordinance, authorized and directed the issue of city bonds not exceeding a certain amount to be used for borrowing money for the erection, construction, and maintenance of water-works for the use of the people of that city. Bonds in the form and amount prescribed were accordingly issued, bearing date Jan. 1, 1874. Each recites that it "is issued under authority of an act of the General Assembly of the State of Illinois, entitled 'An Act authorizing cities, incorporated towns, and villages to construct and maintain water-works,' approved April 15, 1873, and in pursuance of an ordinance of the said city of Litchfield, No. 184, and entitled 'An Ordinance to provide for the issuing of bonds for the construction of the Litchfield water-works,' approved Dec. 4, 1873." The said twelfth section is not referred to in the statute or the ordinance, nor does the latter make mention of the city's indebtedness, although at the time of the issue of the bonds it exceeded the constitutional limit. A *bona fide* holder of them brought suit upon the unpaid coupons thereto attached. *Held*, that he was not entitled to recover.

2. Inasmuch as neither the Constitution nor the statute prescribes any mode by which a party dealing with the city can ascertain the amount of her indebtedness, *quære*, if the bonds had contained recitals which could be justly interpreted as amounting to a representation by her constituted authorities, that her indebtedness, increased by the amount of the bonds, did not exceed the constitutional limit, would she, as against a *bona fide* holder of them, be estopped from disputing the truth of such representations.

3. The present case distinguished from others, wherein it was held that certain recitals in the bonds of a municipal corporation were conclusive as to their validity, and its liability to pay them.

4. In determining whether the constitutional limit of the indebtedness of the city had been exceeded by the issue of the bonds, the court permitted — there having been no separate assessment of the property within the city for the preceding year made or required by law — the introduction of the assessments for State and county taxes embracing all taxable property within the county and townships of which the city formed a part, from which, in connection with a map, the location and taxable value of all the property within the limits of the city for that year could be readily ascertained. *Held*, that the evidence, being the best which the law afforded, was properly admitted.

5. *Quære*, Is the city legally bound to refund to the proper parties the money which her authorized agents or officers received and paid into her treasury, as the proceeds of the sale of the bonds.

ERROR to the Circuit Court of the United States for the Southern District of Illinois.

This was an action of assumpsit, brought Nov. 25, 1876, by Alexander Buchanan against the City of Litchfield, Illinois, to recover the amount of certain coupons of which it was admitted that he was the *bona fide* holder for value. The declaration, besides a count upon the coupons themselves, contains the usual counts for money lent and advanced, and for money had and received. The city defended the action upon the ground that the bonds were issued in violation of the Constitution of the State, and that they were consequently void. The court which, by the stipulation of the parties, tried the issue found for the defendant, and the plaintiff sued out this writ.

The legislature of Illinois passed, April 15, 1873, an act entitled "An Act authorizing cities, incorporated towns, and villages to construct and maintain water-works," by the first section of which act it is provided that all cities, incorporated towns, and villages in the State be, and are hereby, authorized and shall have power to provide for a supply of water for the purpose of fire protection and for the use of the inhabitants of such cities, incorporated towns, and villages, by the erection, construction, and maintaining of a system of water-works.

The second section provides that such cities, incorporated towns, and villages may borrow money, and levy and collect a general tax in the same manner as other municipal taxes may be levied and collected, for the erection, construction, and main-

taining of such water-works, and appropriate money for the same.

The city council, the legislative authority of the city, adopted, Dec. 4, 1873, an ordinance in the words following : —

"*An Ordinance to provide for the issuing of Bonds for the Construction of the Litchfield Water-works.*

"Be it ordained by the city council of the city of Litchfield :

"SECT. 1. That in accordance with the power conferred by section second of an act of the General Assembly of the State of Illinois, entitled 'An Act authorizing cities, incorporated towns and villages to construct and maintain water-works,' approved April 15, 1873, the mayor and city clerk are hereby authorized and instructed to issue not exceeding fifty thousand dollars in Litchfield water bonds, which bonds shall be used for borrowing money for the erection, constructing, and maintaining of water-works for the use of the people of said city of Litchfield.

"SECT. 2. That the said Litchfield water bonds shall be of the denomination of five hundred dollars each, shall be dated Jan. 1, 1874, and shall become due twenty years after said date, but may be redeemed at par at any time after the year 1878, notice being given at the Nassau Bank, in the city of New York, six months in advance of the intention so to redeem, and said bonds shall bear interest at the rate of ten per centum per annum, payable semi-annually at the said Nassau Bank in the city of New York."

As required by the charter, the mayor of the city approved this ordinance, and after its adoption he and the city clerk made one hundred bonds of the denomination of $500 each, as follows, differing in the numbering from 1 to 100, inclusive.

"No. ——.]        LITCHFIELD WATER BOND.        [$500.00.

"CITY OF LITCHFIELD, STATE OF ILLS.

"The City of Litchfield, in the State of Illinois, for value received, promises to pay to Geo. Wm. Ballou or, bearer five hundred dollars, in current money of the United States, at the Nassau Bank in the city of New York, twenty years after date, with interest thereon from the date hereof at the rate of ten per centum per annum, which interest shall be payable semi-annually in current money of the United States on presentation at said bank of the coupons hereto annexed : *Provided,* that the said city of Litchfield shall

have the right to pay off and redeem this bond at its par value at any time after the year A. D. 1878, first giving said bank six months' notice in writing of the intention to so redeem.

"This bond is issued under authority of an act of the General Assembly of the State of Illinois, entitled 'An Act authorizing cities, incorporated towns, and villages to construct and maintain water-works,' approved April 15, 1873, and in pursuance of an ordinance of the said city of Litchfield numbered 184, and entitled; 'An Ordinance to provide for the issuing of bonds for the construction of the Litchfield water-works,' approved Dec. 4, 1873.

"In testimony whereof, the mayor of said city has hereunto set his hand and caused the corporate seal to be affixed, and the clerk of said city to countersign the same this first day of January A.D. 1874.

                                        "W. S. PALMER, *Mayor.*

"B. S. HOOD, *City Clerk.*"

Coupons for the semi-annual interest were attached to the bonds, and the whole number, amounting to $50,000, were sold by the city for the purposes for which they were authorized. The plaintiff's coupons were due July 1, 1876.

The defendant then proved against the objection of the plaintiff, who insisted that such evidence was not admissible against him as the *bona fide* holder of the coupons, that the city of Litchfield is incorporated under a special law which defines its boundaries; that there was no assessment made of the taxable property within said city for the year 1873, separately, but that the city is within the limits of two municipal townships organized under the township organization laws of the State, one called North Litchfield and the other South Litchfield, each six miles square, and that the taxable property in the city was assessed for State and county taxes in the township in which it was situated and to which it belonged; that the property of the city as assessed for State and county taxes for the year 1873 was $1,400,000, which valuation was ascertained by the following method : —

The assessors of North and South Litchfield returned to the clerk of the county court the lists and value of the property assessed for taxation for the year 1873 in said townships respectively, which lists contained a description of all the lands, lots, and other real estate in said township, with the proper

valuation opposite each tract or lot.    With these lists and the plat of the city before him, the clerk was able to ascertain the description and value of all the real estate in the city, and by footing the value of the several lands and lots found within the city limits the aggregate value of all the real estate of the city was ascertained for the year 1873.

By another special law the city of Litchfield is made one school district, called the Litchfield school district.    And it is a part of the legal duty of the township to note opposite the name of each owner of personal property assessed for taxation the school district in which he resides.    That the assessors of North and South Litchfield for the year 1873 noted opposite the names of the owners of personal property in their township residing within the city limits that they resided in Litchfield school district, and the assessed value of the personal property of the city of Litchfield was ascertained by computing the value of all the personal property assessed for taxation in the school district.

That railroad property and the property of corporations were assessed by the State Board of Equalization, and the whole value of these species of property lying in Montgomery County (in which the city of Litchfield is situated) was certified by the auditor to the county clerk, and the proportion taxable in Litchfield was ascertained by the clerk.

That the assessment thus made by the town assessors of the towns of North and South Litchfield was the only assessment made, or authorized by law to be made, of the property situated in the city of Litchfield for State and county taxes for the year 1873, and which assessment for the purposes aforesaid was the last assessment for State and county taxes previous to the issuing and making of said bonds.    That by compiling the assessments thus made the exact amount of the value of taxable property in said city of Litchfield for the year 1873, as assessed for State and county taxes, should be and is ascertained to be the said sum of $1,400,000.

It was proved that the debt of the city of Litchfield on and before the first day of January, 1874, exclusive of the water bonds, was $70,000.

Sect. 12 of art. 9, in force in 1870, of the Constitution of the

State, is in these words : " No county, city, township, school district, or other municipal corporation shall be allowed to become indebted in any manner or for any purpose to an amount including existing indebtedness in the aggregate exceeding five per centum on the value of the taxable property therein to be ascertained by the last assessment for State and county taxes previous to the incurring of such indebtedness."

Upon the trial the following questions arose : —

*First*, Whether said twelfth section of the ninth article of the Constitution of the State of Illinois, by its own force and terms, without appropriate legislation, limited or affected the otherwise lawful power of the city of Litchfield to issue the bonds and coupons, and sell the same to raise money for the construction of water-works according to the provisions of the act of April 15, 1873, and the ordinance of the city of Litchfield No. 184, in relation thereto, so as to render said bonds and coupons void as being in excess of five per cent including existing indebtedness on the value of taxable property in said city as ascertained by the last assessment for State and county taxes preceding the issue of such bonds.

*Second*, Whether the facts offered in evidence for the purpose of showing the value of taxable property in the city of Litchfield for the year 1873 are competent and sufficient to establish the value of taxable property therein, to be ascertained by the last assessment thereof, for State and county taxes previous to the issue of such bonds.

*Third*, Whether the said facts tending to prove that the said bonds, including the indebtedness of said city, exceed five per cent on the value of the taxable property of said city at the time they were issued, as ascertained in manner before stated, are admissible or competent as evidence in this case to impair the rights of the plaintiff as the *bona fide* holder of the coupons sued on.

And the opinion of the said judges being opposed upon the questions, the latter were duly certified to this court.

*Mr. John M. Palmer* and *Mr. Frank Morison* for the plaintiff in error.

The defence relied upon by the city is the nullity of the bonds by reason of her asserted absolute want of power to issue

them. It rests upon the constitutional clause, that "no county, city, &c., *shall be allowed,*" &c. The question arises, whether the clause operates *proprio vigore* upon municipal corporations, and imposes an actual limitation upon them, or whether it enjoins a duty upon the legislature, when either creating them or providing for the government and control of such as are already in existence. The sounder view, we submit, is that it requires for its enforcement legislation prescribing, under adequate penalties, the duties of the officers of a municipal corporation and declaring the mode by which those dealing with them may ascertain its indebtedness. None has been enacted.

But, conceding the clause to be self-operating, it does not unconditionally prohibit the city from contracting debts for the purposes enumerated in its charter, or in the act of April 15, 1873. That power is expressly granted, and the limitation upon it taking effect only under certain circumstances, the question as to when it may be lawfully exercised must be necessarily dependent upon the decision of the city council whether they do in fact exist. That body alone has access to the means by which they can be investigated and determined. The passage of the ordinance, so far as innocent third parties are concerned, was a final and authoritative declaration by those who were clothed with authority to make it, that no circumstances existed which precluded the exercise of that power. The bonds issued, whereon the money was raised to carry that ordinance into effect, are, therefore, valid securities in the hands of a *bona fide* holder for value. The city is as effectually estopped by their recitals as if the ordinance had declared in express terms, as it now does virtually and by necessary implication, that, at the time of its passage, her debt, including that thereby incurred, would not be in excess of the prescribed amount.

Under the well-settled rule of this court, that nothing but a total want of power renders this class of securities void in the hands of such a holder, bonds issued without proper formalities, bonds issued contrary to the provisions of the laws authorizing them, bonds fraudulently issued, stolen bonds, the proceeds of which never reached the municipalities issuing them, and bonds declared to be invalid by the courts of the

States in which they were issued, have all been pronounced good here. The municipalities have been held to the payment of them, without regard 'to any equities which would constitute a good defence against a party who had notice of them. *Commissioners of Knox County* v. *Aspinwall*, 21 How. 539; *Moran* v. *Miami County*, 2 Black, 732; *Mercer County* v. *Hacket*, 1 Wall. 83; *Mayor* v. *Muscatine*, id. 384; *Kennicott* v. *Supervisors*, 16 id. 452; *Supervisors* v. *Schenk*, 5 id. 784; *County of Daviess* v. *Huidekoper*, 98 U. S. 98; *County of Schuyler* v. *Thomas*, id. 169; *County of Callaway* v. *Foster*, 93 id. 567; *County of Scotland* v. *Thomas*, 94 id. 682; *County of Warren* v. *Marcy*, 97 id. 96; *Cromwell* v. *County of Sac*, 96 id. 51; *Commissioners* v. *Bolles*, 94 id. 104; *Commissioners* v. *January*, id. 202.

*Marcy* v. *Township of Oswego* (92 id. 637) was a suit on bonds issued under the authority of a statute of Kansas, which provided that they should not exceed such a sum as would require a levy of more than one per cent per annum to pay the yearly interest. Each recited that it was issued by virtue of and in accordance with that statute, and in pursuance of and in accordance with the vote of three-fifths of the legal voters of the township. A recovery was resisted, upon the ground that the authorized amount was exceeded; but this court held the bonds to be valid in the hands of a *bona fide* holder, and remarked: " It is to be observed that every prerequisite fact to the execution and issue of the bonds was of a nature that required examination and decision. The existence of sufficient taxable property to warrant the amount of the subscription and issue was no more essential to the exercise of the authority conferred upon the board of county commissioners than was the petition for the election, or the fact that fifty freeholders had signed, &c. These are all extrinsic facts, bearing not so much upon the authority vested in the board to issue the bonds, as upon the question whether that authority should be exercised."

The bonds now in question recite, that they are issued under the authority of an act of the General Assembly and pursuant to an ordinance of the city. The cases are not distinguishable in principle. The only difference in point of fact is that the

prohibition in one is declared by statute, and in the other by a constitutional provision. It is hardly necessary to say that a law passed pursuant to the Constitution has, while it remains in force, the same binding efficacy as the Constitution itself.

In *Humboldt Township* v. *Long* (id. 642), which was governed by the same statute, the required notice of the popular election was not given. This court, however, reaffirming the doctrines of *Marcy* v. *Township of Oswego*, ruled, in view of the recitals in the bonds, — and they are not substantially different in effect from those in the present case, — that the township was liable. Unless the vote cast at such an election was in favor of the issue of the bonds, the commissioners were not authorized to order it. Their decision that the election had been duly held, although only inferrible from their order for the issue, was regarded as conclusive. So here, under the statute of Illinois and her Constitution, giving to the latter the broadest effect, it was a condition precedent to the power of the city council that certain facts, peculiarly if not exclusively within its knowledge, should exist, but which a third party had no means of ascertaining. The exercise of the power was a decision by the appointed tribunal that such facts existed. We may therefore insist, in the language of Mr. Justice Strong, that "the bonds are not invalid by reason of their having been voted and issued in excess of the statutory (constitutional) limit." *Wilson* v. *Salamanca* (99 id. 499) is to the same effect, and the decisions here contain nothing in conflict therewith.

If the city had contracted with a party to erect the waterworks, she, after accepting them and enjoying the benefit and protection which they afford, could not set up that the contract entailed upon her a debt in excess of the amount she was allowed to incur. *Union Water Co.* v. *Murphy's Flat Fluming Co.*, 22 Cal. 650; *Whitney Arms Co.* v. *Barlow et al.*, 63 N. Y. 62. The bondholders' case is as meritorious as his, because their money was, in this instance, faithfully applied to the construction and maintenance of those works.

Again, if the city, with a knowledge of her then indebtedness, passed the ordinance, sold the bonds, and received into her treasury the money therefor, can she set up her own fraud to exempt her from liability to pay it? The doctrine of *ultra*

*vires* has no application to such a case, and she, to the same extent as an individual, is liable for the acts of her servants, who, in their appropriate sphere of duty, are engaged in the transaction of her business.

No assessment of the taxable property of the city of Litchfield was made or authorized to be made in the year 1873, and the value of that property was, therefore, not "ascertained," as provided for in the constitutional provision.

This being so, the remaining evidence shows that the valuation of the towns of North and South Litchfield was ascertained by their assessors; that other officers ascertained the value of the railroad property, and still others that of the school property in a part of the county in which Litchfield is situated; and that, by compiling these different returns, the assessable valuation of the property in the city of Litchfield may be determined.

It is not in evidence that it was the duty of any city officer to so compile these various returns, or that any authorized person ever did so; but the court is now asked to do it, and so far constitute itself a city functionary as to make from these returns an estimate of the taxable value of the then property in the city.

The fact indispensable to make out the defendant's case on this point is the ascertained taxable value of this property in 1873. The evidence shows that it never was ascertained.

*Mr. A. L. Knapp, contra.*

MR. JUSTICE HARLAN, after stating the case, delivered the opinion of the court.

The first and most important of the certified questions involves the construction of the twelfth section of the ninth article of the Constitution of Illinois.

The words employed are too explicit to leave any doubt as to the object of the constitutional restriction upon municipal indebtedness. The purpose of its framers, beyond all question, was to withhold from the Legislative Department the power to confer upon municipal corporations authority to incur indebtedness in excess of a prescribed amount. The authority, therefore, conferred by the act of April 15, 1873, to incur

indebtedness in the construction and maintenance of a system of water-works, could have been lawfully exercised by a city, incorporated town, or village, only when its liabilities, increased by any proposed new indebtedness, would be within the constitutional limit. No legislation could confer upon a municipal corporation authority to contract indebtedness which the Constitution expressly declared it should not be allowed to incur. *Law et al.* v. *The People ex rel.*, 87 Ill. 385; *Fuller* v. *City of Chicago*, 89 id. 282.

. It was proved that the debt of the city of Litchfield on and before the 1st of January, 1874, exclusive of the water bonds, was $70,000.

If, therefore, it appears, by evidence, of which the city may rightfully avail itself, as against a *bona fide* holder for value of the coupons in suit, that the bonds, issued Jan. 1, 1874, created an indebtedness in excess of the amount to which municipal indebtedness is restricted by the Constitution, there would seem to be no escape from the conclusion that the bonds are void for the want of legal authority to issue them at the time they were issued.

To the evidence upon which the city relied as showing such want of authority, objections were interposed by the plaintiff, who insisted that it was not admissible against him, as a *bona fide* holder of the coupons in suit.

That evidence was made the basis of important findings of fact. Introduced for the purpose of showing the value of taxable property within the limits of the city, and the extent of her indebtedness, when these water bonds were issued, it is not, in our opinion, liable to any serious objection. It seemed to be the best proof upon those subjects that the law furnished.

In determining whether the constitutional limit of indebtedness has been exceeded by a municipal corporation, an inquiry would always be necessary as to the amount of taxable property within its boundaries. Such inquiry would be solved, not by information derived from individual officers of the municipality, but only in the mode prescribed in the Constitution; that is, by reference to the last assessment for State and county taxes for the year preceding the issuing of the bonds.

That test was applied in this case. Had there been, under or by competent legal authority, an assessment for that year of taxable property within the city, separately from all other property in the county or township to which the city belonged, such assessment would undoubtedly have been controlling. But there was no such official assessment, in fact, or required by law. There were, however, official assessments for State and county taxes for 1873, embracing all taxable property within the county and townships of which the city formed a part, and from which, in connection with the map of the city, could be readily ascertained the location and taxable value of all property within the corporate limits of the city for that year. The purchaser of the bonds was certainly bound to take notice not only of the constitutional limitation upon municipal indebtedness, but of such facts as the authorized official assessments disclosed concerning the valuation of taxable property within the city for the year 1873.

But in what way was the purchaser to ascertain the extent of the city's indebtedness existing at the time the bonds in question were issued? The extent of that indebtedness was a fact peculiarly within the knowledge of the constituted authorities of the city. It was necessarily left, both by the Constitution and the statute of 1873, to their examination and determination, under the constitutional injunction, however, that no municipal corporation should exceed the prescribed amount of indebtedness. It was, nevertheless, a fact which, so far as we are advised by the record, could not at all times and absolutely, or with reasonable certainty, be ascertained from any official documents to which the public had access. A like difficulty, perhaps, would arise in the case of any municipal corporation, possessing the general power of raising money, by taxation and otherwise, to carry on local government. Its liabilities might frequently vary in their aggregate amount, and at particular periods might be of different kinds, some fixed and absolute, while others would be contingent upon events thereafter to happen. These considerations were, doubtless, present in the minds as well of those who framed the Constitution as of those who passed the statute of 1873.

As, therefore, neither the Constitution nor the statute prescribed any rule or test by which persons contracting with municipal corporations should ascertain the extent of their "existing indebtedness," it would seem that if the bonds in question had contained recitals which, upon any fair construction, amounted to a representation upon the part of the constituted authorities of the city that the requirements of the Constitution were met, — that is, that the city's indebtedness, increased by the amount of the bonds in question, was within the constitutional limit, — then the city, under the decisions of this court, might have been estopped from disputing the truth of such representations as against a *bona fide* holder of its bonds. The case might then, perhaps, have been brought within the rule announced by this court in *Town of Coloma* v. *Eaves* (92 U. S. 484), in which case we said, and now repeat, that "where legislative authority has been given to a municipality, or to its officers, to subscribe for the stock of a railroad company, and to issue municipal bonds in payment, but only on some precedent condition, such as a popular vote favoring the subscription, and where it may be gathered from the legislative enactment that the officers of the municipality were invested with power to decide whether the condition precedent has been complied with, *their recital that it has been*, made on the bonds issued by them and held by a *bona fide* purchaser, is conclusive of the fact, and binding upon the municipality; for the recital is itself a decision of the fact by the appointed tribunal." So, in the more recent case of *Orleans* v. *Pratt* (99 id. 676), it was said that "where the bonds on their face *recite the circumstances which bring them within the power*, the corporation is estopped to deny the truth of the recital."

The cases cited by counsel for the plaintiff do not assert any different doctrines, as will be seen from an examination of those chiefly relied upon. In *Commissioners of Knox County* v. *Aspinwall* (21 How. 539), which was a case of municipal subscription of stock in a railroad company, the statute upon which the subscription there purported to rest made the existence of certain facts essential to the exercise of authority to make the subscription and issue bonds therefor. The bonds,

upon their face, however, recited that they were issued *in pursuance of* the statute, which prescribed the conditions precedent to any subscription, and, therefore, the court said, they imported a compliance with the law under which they were issued. It was, consequently, ruled that the purchaser was not bound to look further for evidence of a compliance with the condition annexed to the grant of the power.

In *Kenicott* v. *Supervisors* (16 Wall. 452), the rule was thus stated: "If an election or other fact is required to authorize the issue of the bonds of a municipal corporation, and if the result of that election, or the existence of that fact, is by law to be ascertained and declared by any judge, officer, or tribunal, and that judge, officer, or tribunal, on behalf of the corporation, executes or issues the bonds, *with a recital that the election has been held or that the fact exists or has taken place,* this will be sufficient evidence of the fact to all *bona fide* holders of the bonds."

In *County of Moultrie* v. *Savings Bank* (92 U. S. 631), the validity of the bonds there in suit was questioned, upon the ground that certain precedent conditions imposed by statute had not been complied with. The bonds, however, recited their issue to be "*in conformity to the provisions*" of the statute which gave the authority to issue them. So, in *Marcy* v. *Township of Oswego* (id. 637), where the statute authorizing a municipal subscription, with the sanction of three-fifths of the voters interested, and the issue of bonds in payment thereof, required particular facts to exist and certain acts to be performed before the right to make the subscription and to issue bonds in discharge thereof could be exercised. The statute contained, amongst other things, a proviso to the effect that the amount of bonds sold by the township should not exceed such a sum as would require a levy of more than one per cent per annum on the taxable property of the township to pay the yearly interest. It appeared that the statute had not, in some of these respects, been complied with; that is, that the conditions had not been performed which the statute required before any subscription should be made or bonds issued. But, adhering to the rule announced in *Town of Coloma* v. *Eaves,* the defence was overruled in favor of a *bona fide* holder for

value, because of the *recital* in the bonds that their issue was "*by virtue of,* and *in accordance with,*" the statute, and "*in pursuance of,* and *in accordance with,* the vote of three-fifths of the legal voters of the township."

Returning to the case in hand, it will be observed that the bonds issued by the city of Litchfield contain no recital whatever of the circumstances which, under the Constitution of the State, must have existed before the city could legally incur the indebtedness for which the bonds were issued. They purport, it is true, to be issued under the authority of the act of April 15, 1873, and in pursuance of the ordinance of the city based upon that statute. But that statute does not expressly restrict the exercise of the power to erect and maintain a system of water-works to cases in which the aggregate indebtedness of the city was within the limit which the Constitution declared no municipal corporation should exceed. Nor does the city ordinance recite or state, even in general terms, that the proposed indebtedness was incurred in pursuance of or in accordance with the Constitution of the State, or under the circumstances which permitted the issue of the bonds. Consequently, a recital that the bonds were issued under the authority of the statute, and in pursuance of the city ordinance, did not necessarily import a compliance with the Constitution. Had the bonds made the additional recital that they were issued in accordance with the Constitution, or had the ordinance stated, in any form, that the proposed indebtedness was within the constitutional limit, or had the statute restricted the exercise of the authority therein conferred to those municipal corporations whose indebtedness did not, at the time, exceed the constitutional limit, there would have been ground for holding that the city could not, as against the plaintiff, dispute the fair inference to be drawn, from such recital or statement, as to the extent of its existing indebtedness.

Any different conclusion from that indicated would extend the doctrines of this court upon the subject of municipal bonds farther than would be consistent with reason and sound policy, and farther than we are now willing to go. The present action cannot be maintained, unless we should hold that the

*mere fact* that the bonds *were* issued, without any recitals of the circumstances bringing them within the limit fixed by the Constitution, was, in itself, conclusive proof, in favor of a *bona fide* holder, that the circumstances existed which authorized them to be issued. We cannot so hold.

Our attention is called by counsel to the exceeding hardship of this case upon those whose money, it is alleged, has supplied the city of Litchfield with a system of water-works, the benefits of which are daily enjoyed by its inhabitants. The defence is characterized as fraudulent and dishonest. Waiving all considerations of the case, in its moral aspects, it is only necessary to say that the settled principles of law cannot, with safety to the public, be disregarded in order to remedy the hardships of special cases.

Whether the city is under a legal obligation to make restitution of the money, obtained without authority of law, that is, to refund to the proper party or parties such sums as were actually received by its authorized agents or officers upon the sale of the bonds, is not a question arising in the present action, which is only for the recovery of the stipulated interest upon such bonds. Upon this point it is not proper at this time, or in this form of action, to express an opinion.

What we have said constitutes a sufficient answer to all of the questions certified to us, and requires an affirmance of the judgment.

*Judgment affirmed.*