BOARD OF CHOSEN FREEHOLDERS OF THE COUNTY OF BERGEN *v.* MERCHANTS' EXCHANGE NAT. BANK OF NEW YORK, impleaded, etc.

(*Circuit Court, S. D. New York.* July 11, 1882.)

MUNICIPAL BONDS—AUTHORITY TO BE STRICTLY CONSTRUED.
> Where municipal bonds do not contain recitals asserting them to be issued conformably to law, a purchaser for value cannot recover.

*J. D. Bedle* and *Hamilton Wallis,* for complainant.

*Stephen P. Nash,* for defendant.

WALLACE, C. J. This suit is brought to compel the defendant to surrender 102 bonds for $500 each, now held by the defendant, which purport to be the negotiable obligations of the corporation complainant, but which, as is alleged, are not in fact the obligations of the complainant, but are unauthorized and fraudulent instruments executed and issued by one Bogert, some of them while he was the collector of Bergen county, and some of them after he ceased to be such collector.

Prior to 1876 the complainant had issued, pursuant to law, certain bonds known as "bounty bonds," which were to become due July 1, 1876, and upon which there would be then payable the sum of $362,800. By an act of the legislature of New Jersey of April 5, 1876, it was provided that the board of chosen freeholders of any county of the state might renew any loan for which bonds had theretofore been issued by law, when the same might thereafter become due, by the issuing of new bonds for the loan in any part thereof. Such bonds were to be either coupon or registered bonds, in the discretion of the board, and were to be numbered; and the collector of the county was required to make a register of the number, denomination, date of issue, and time of payment in a book to be provided by the board for that purpose. The act provided that such bonds should be executed by attaching the seal of the corporation, and be signed by the director of the board and the clerk thereof, and be countersigned by the collector.

Under the authority of this act the corporation resolved to issue new bonds. Proposals for the purchase of bonds to the amount of $360,000 were invited by advertisement, and 800 coupon bonds for $500 each were lithographed and prepared for the signature of the proper officers, in blank as to the name of the payee and as to the time of payment, and having the signature of the collector lithographed upon the coupons. Instead of selling the bonds at public

sale, however, the bonds were issued by the proper officers from time to time during the early summer of 1876, as they were needed to retire old bonds; some of them being sold and the proceeds used to pay off old bonds, and some of them being directly exchanged for old bonds. When thus issued the blanks were filled up and the bonds were signed and sealed. It was largely left to the collector, Bogert, as the financial officer of the corporation, to negotiate the sale and exchange of the bonds, and to carry out the details of the transactions. On several occasions a large number of bonds were signed by the auditor and clerk, to be filled out and countersigned by Bogert when he should have occasion to issue them. Bogert was entrusted with the custody of the seal, in order to affix it when he should require. Finally, at the suggestion of Bogert, the director and clerk affixed their signature to all of the 800 bonds remaining undisposed of; it being understood that no more should be issued by Bogert than were required to retire the old bonds, and that he should destroy the rest.

As the financial officer of the corporation, Bogert had the control of its funds, and paid its current expenditures. He made the temporary loans for the needs of the corporation. In March, 1876, he made a loan of the defendant for the benefit of the corporation, but in his own name, and pledged as security $40,000 of the temporary certificates of the corporation. He continued to hold the office of collector until May 8, 1878. He died January 8, 1880. After his death it was discovered that the defendant held the bonds in suit, and that they had been fraudulently issued by Bogert, he having countersigned and sealed 102 more of the bonds which the director and clerk had signed than were required to retire the old issue of bonds. A difficult question of fact arises upon the proofs in regard to the time when these bonds were countersigned and issued by Bogert, but the conclusion is reached, although not without great hesitation, that 24 of the bonds were thus countersigned, issued, and pledged by him as security for loans with the defendant while he was the collector of the corporation, and that the remaining 78 were not countersigned or issued by him until after he had ceased to be collector.

Upon these facts, although the defendant is a holder of the bonds for value, it must be adjudged to surrender them to the complainant. As to the 78 bonds countersigned by Bogert after he ceased to be collector, his signature as collector is a forgery, and the complainant is for that reason not liable upon them. As to the 24 bonds issued by Bogert while he was collector, a conclusion adverse to the defendant

is reached upon the constraining authority of *Buchanan* v. *Litchfield,* 102 U. S. 278.   Here, as in that case, the bonds did not contain any recitals to show that they were issued in conformity with the act of the legislature which empowered the municipality to create the obligations.   The act authorized the complainant to issue new bonds for the specific purpose of renewing loans for which its bonds were then outstanding.   The act did not require the new bonds to be exchanged directly for the old bonds, as has been argued by counsel for the complainant; but it did limit and restrict the power of the officers of the municipality to the creation of obligations for a specified object, and to an extent which was capable of ascertainment.   While the officers of the municipality were authorized in their discretion to sell the new bonds and retire the old ones with the proceeds, if the holder of an old bond should refuse to exchange it for a new one; or if the new bonds could be sold at a premium; or if, for any other reasons, it might be more desirable to sell the new bonds than to exchange them directly for old ones,—there was no method by which a purchaser could ascertain whether the officers of the county were acting within the limits of their authority or not.   He might be able, perhaps, to ascertain what was the amount of the old indebtedness by examining the records of the municipality.   If those charged with issuing the bonds kept the register required by law to be kept, he might, if permitted to inspect it, ascertain how many had been issued, but he could not know whether all registered had been actually sold, or what sum had been realized from their sale.   The officer charged with the duty of keeping a register of the bonds was the person directly entrusted with negotiating them, and could conform his register to suit his own fraudulent aims if so disposed.   In short, a purchaser of the bonds was of necessity required mainly to rely upon the representations and good faith of the officers to whom the issuing of the bonds was committed.

Concededly the purchaser of negotiable securities which are issued by agents or officials must assume the risk of being able to establish the authority of the agents or officials to bind their principal; but when the officers of a municipal corporation are permitted by law to put its obligations upon the market and dispose of them to purchasers under circumstances which preclude the purchaser from knowing whether the officials are keeping within the exact limits of their duty, and he can only know that they are acting within the general scope of their powers, there is no reason why a municipality should not be as effectually estopped by the acts of their agents as a business corporation or a private person would be under the same circumstances.

Now it has over and again been held by the federal courts that when these officers insert recitals in such bonds declaring them to be issued in conformity with the statute which authorizes the municipality to incur the obligation, a purchaser need go no further; he may rely on the truth of the recitals, and the municipality is concluded by them.. And so in this case, if the bonds contained similar recitals, the court would justify the purchaser in reposing upon them and the defendant would be protected. Where any logical distinction can be found between the character and effect of a representation made by the officials in the bond itself, and one made by them outside the bond, and orally or by conduct to the purchaser, it is difficult to perceive. What stronger representation can be made than is attested by the fact that they have executed the bonds and put them in circulation, and thus by their official signatures and acts given them currency as valid obligations?

Nevertheless, the precise point was ruled adversely to these suggestions by the supreme court of the United States in *Buchanan* v. *Litchfield*. In that case the municipality was restricted in issuing its bonds to the creation of an indebtedness which should not exceed 5 per centum on the value of the taxable property of the corporation, to be ascertained by the last previous assessment for state and county purposes. The court say the extent of the indebtedness was a fact peculiarly within the knowledge of the constituted authorities of the city, which could not, with reasonable certainty, be ascertained from any official documents to which the public had access. But as the bonds did not contain recitals asserting them to be issued conformably with law, it was held a purchaser for value could not recover when it appeared that the restriction had not been strictly observed. Applying the rule thus enunciated, the defendant cannot rely upon its title as a holder for value, and must surrender all the bonds in suit.

A decree is ordered for the complainant.