BATES *v.* INDEPENDENT SCHOOL-DISTRICT OF RIVERSIDE OF LYON CO.[1]

*(Circuit Court, N. D. Iowa, W. D.    October Term, 1885.)*

1. MUNICIPAL BONDS—SCHOOL-DISTRICT BOND—RECITALS—ESTOPPEL—ISSUE IN EXCESS OF CONSTITUTIONAL LIMITATION AS TO INDEBTEDNESS.

Where it is recited in municipal bonds that they are issued "*in pursuance of*" or "*in conformity with*" the provisions of a given statute, this is an assertion that in issuing the bonds the provisions of the statute have been followed or conformed to; but when the recital is only that the bonds are issued "*under*" the provisions of a given statute, this simply asserts that the bonds are subject to or controlled by the provisions of the statute named; or, in other words, the purchaser is thereby informed where he should look in order to learn what 'the provisions of the statute are which confer and limit the power to issue the bonds; and the municipality issuing such bonds is not estopped from showing that they are void, because they created an indebtedness in excess of the constitutional limitation.

2. SAME—BONA FIDE PURCHASER—NOTICE.

The purchaser of bonds is bound to know the constitutional limit of the indebtedness which the municipal corporation could lawfully incur, and where the bonds offered for sale to him exceed this limit, he is bound to take notice that such bonds could not be legally issued, no matter what the recitals therein may set forth.

At Law.

*I. N. Kidder* and *Joy, Wright & Hudson*, for plaintiff.

*S. M. Marsh*, for defendant.

SHIRAS, J.    Plaintiff seeks in this action to recover judgment against the defendant upon certain interest coupons belonging to two series of bonds issued in June, 1880, and July, 1881, by the defendant corporation.    The first series, it is claimed, were issued under the powers granted to independent school-districts by the provisions of sections 1821 to 1823 of the Code of Iowa, and chapter 121 of the Acts of the Seventeenth General Assembly.    The second series, it is claimed, were issued under the provisions of chapter 132 of the Acts of the Eighteenth General Assembly, for the purpose of taking up and refunding bonds of an earlier date, bearing 10 per cent. interest.

Among other defenses relied upon by the defendant is that the bonds thus issued were void, because the indebtedness of the school-district, at the time of the issuance of the bonds, was in excess of 5 per cent. of the assessed value of the taxable property of the district, and that, consequently, the creation of the debt evidenced by the bonds was forbidden by section 3 of article 11 of the constitution of the state of Iowa, which provides that "no county or other political or municipal corporation shall be allowed to become indebted in any manner, or for any purpose, to an amount in the aggregate exceeding five per centum on the value of the taxable property within such county or corporation, to be ascertained by the last state and county tax-lists previous to the incurring of such indebtedness."

[1] Reported by Robertson Howard, Esq., of the St. Paul bar.

The evidence shows that the value of the taxable property within the limits of the school-district, as shown by the state and county tax-lists next preceding the dates of the bonds owned by plaintiff, was, for the year 1879, $47,220, and for 1880, $44,571. Under the constitutional limitation of 5 per cent., therefore, the indebtedness could not lawfully exceed $2,400, in round numbers.

The evidence shows, also, that the indebtedness against the district at the dates the bonds sued on were issued, exclusive of these bonds, was largely in excess of the limit fixed by the constitution. The bonds are therefore void, and if the defendant is not estopped from setting up this defense against the plaintiff, it is clear that the collection thereof cannot be enforced.

On part of the plaintiff it is claimed that he is an innocent holder for value of these bonds; that he bought them relying on the verity of the recitals contained in the bonds, as he had a right to do; and that these recitals estop the defendant from now asserting that the bonds were issued in violation of the constitutional limitation.

In the first series of bonds sued on it is recited therein that the bonds are "issued under provisions of sections 1821 to 1823 of the Code of Iowa of 1873; chapter 121, Laws of the Seventeenth General Assembly." The sections of the Code referred to give authority to independent school-districts to borrow money for certain purposes, and to issue bonds, defining the manner in which the power may be exercised, and providing that "no district shall permit a greater outstanding indebtedness than an amount equal to 5 per centum of the last assessed value of the property of the district."

The plaintiff claims that the recital in the bonds that the same were "issued under the provisions" of these sections is in effect a recital that the indebtedness of the district did not exceed the constitutional limitation, and that the plaintiff could rely thereon in making the purchase, and thereby estop the defendant from showing that in fact the indebtedness of the district largely exceeded the constitutional limit.

Counsel for plaintiff cite the long list of cases decided by the supreme court of the United States, beginning with *Commissioners of Knox Co.* v. *Aspinwall,* 21 How. 539, wherein it has been in substance held "that if an election or other fact is required to authorize the issue of the bonds of a municipal corporation, and if the result of that election, or the existence of that fact, is by law to be ascertained and declared by any judge, officer, or tribunal, and that judge, officer, or tribunal, on behalf of the corporation, executes or issues the bonds, with a recital that the election has been held, or that the fact exists or has taken place, this will be sufficient evidence of the fact to all *bona fide* holders of the bonds." *Kenicott* v. *Supervisors,* 16 Wall. 452.

Relying upon the doctrine of these cases, counsel for plaintiff claims that the recitals in the bonds in question are sufficient to estop the

v.25F,no.4—13

defeadant in the present action.   This presents two questions for determination :   *First.*  What is the true meaning of the recitals in the bonds ?  *Second.*  Can the recitals, even if clear and specific, estop the defendant from showing what the assessed value of the taxable property of the district was when these bonds were issued ?   To estop a party from showing what the truth is in a given case, the statement or recital relied on as working an estoppel should be clear and unambiguous ; or, in the language of the supreme court of the United States in *School-district* v. *Stone,* 106 U. S. 183 ; S. C. 1 Sup. Ct. Rep. 84.

"Where the holder relies for protection upon mere recitals, they should, at least, be clear and unambiguous, in order to estop a municipal corporation, in whose name such bonds have been made, from showing that they were issued in violation or without authority of law."

Where the bonds have recited that they were issued "in pursuance of," or "in conformity with," or "by virtue of," or "by authority of," a given statute, it has been ruled that thereby a compliance with the provisions of the statute would be inferred in favor of a *bona fide* holder ; but, as is stated in *School-district* v. *Stone, supra,* "in all such cases, as a careful examination will show, the recitals fairly imported a compliance in all substantial respects with the statute giving authority to issue the bonds."

The recital relied upon in the present case is that the bonds were issued "under provisions of sections 1821, 1822, and 1823, of the Code," etc.   Does the word "under" mean the same as the phrases "in pursuance of," "in conformity with," "by virtue of," or "by authority of?"   These all fairly imply a compliance with the provisions of the statute, because it cannot be justly said that bonds issued in violation of a statute are issued "in pursuance of," or "in conformity with," or "by virtue of," or "by authority of," the statute thus violated.   The word "under," however, has a different signification.   Primarily it is the correlative of "over" or "above," and signifies being in a lower condition or position ; and, secondarily, it indicates a relation of subjection or subordination to some superior power, higher authority, or controlling fact.   Thus, when it is said that the citizens of a given state are living under the constitution and laws of the state, it is not asserted that all such citizens are living in conformity with such constitution and laws, but only that they are subject to such constitution and laws.   They may live under them and conform thereto, or may live under and violate them.   When it is asserted that certain bonds are issued in pursuance of, or in conformity with, the provisions of a given statute, this is an assertion that in issuing the bonds the provisions of the statute have been followed or conformed to ; but when the recital is only that the bonds are issued under the provisions of a given statute, this simply asserts that the bonds are subject to or controlled by the provisions of the statute named ; or, in other words, the purchaser is thereby informed where he should look in order to

learn what the provisions of the statute are which confer and limit the power to issue the bonds.

An examination of the statutes of Iowa shows that the Twelfth, Fourteenth, Fifteenth, Sixteenth, Seventeenth, and Eighteenth general assemblies had each passed acts providing for the issuing of bonds by school-districts, or amending the statutes already passed, so that when the bonds in question were issued a good reason existed why it should be stated under which act the right to issue the bonds was claimed. Thus part of the bonds recite that they were issued under certain sections of the Code, and others recite that they were issued under the provisions of chapter 132 of the Acts of the Eighteenth General Assembly. In order that intending purchasers might be advised as to the provisions of law controlling the issuance of the several series of bonds, the officers of the district recite where such provisions may be found, but the recital does not fairly assert that the provisions of the statute have been complied with. If it is urged that such a construction of the recitals, though justified by the literal meaning of the words employed, is too strict, and not in accordance with the probable intent of the officers executing the bonds, and should not, therefore, be adopted, the answer is found in the language of the supreme court in *School-district* v. *Stone, supra,* wherein it is said:

"This construction of the words employed in the bonds is characterized by counsel for the defendant in error as too narrow and technical. It may be a strict construction, and such, it seems to the court, ought to be the rule when it is proposed by mere recitals upon the part of the officers of a municipal corporation to exclude inquiry as to whether bonds issued in its name were made in violation of the constitution and of the statute, of the provisions of which all must take notice."

The conclusion reached upon this question is, that in none of the bonds owned by plaintiff to which the coupons sued on are attached is there any recital touching the amount of the indebtedness owing by the school-district when these bonds were issued, and consequently the defendant is not estopped from showing that the bonds are void by reason of the fact that when they were issued the indebtedness of the district was then in excess of the constitutional limit. Granting, however, that the recital in the bonds is in effect a statement that the bonds were issued in conformity with the provisions of the statute and of the constitution, the question would then arise whether such recital would estop the defendant from showing that the bonds created an indebtedness in excess of the constitutional limitation, and are therefore void. In the case of *Buchanan* v. *Litchfield*, 102 U. S. 278, the supreme court passed upon a similar question arising under the constitution of the state of Illinois, which contains a provision identical with that found in the constitution of Iowa. The court held that, in determining the amount of the indebtedness which could be lawfully incurred, reference must be had to the source of information expressly named in the constitutional limitation, to-wit,

the last assessment for county and state taxes; or, to quote the exact language of the decision:

"In determining whether the constitutional limit of indebtedness has been exceeded by a municipal corporation, an inquiry would always be necessary as to the amount of taxable property within its boundaries. Such inquiry would be solved, not by information derived from individual officers of the municipality, but only in the mode prescribed in the constitution; that is, by reference to the last assessment for state and county taxes for the year preceding the issuing of the bonds. The purchaser of the bonds was certainly bound to take notice, not only of the constitutional limitation upon municipal indebtedness, but of such facts as the authorized official assessments disclose concerning the valuation of taxable property within the city for the year 1873."

When, therefore, the bonds in question in this action were offered for sale, the purchaser was bound to know that the constitution of the state limited the amount of indebtedness that could be legally incurred by the school-district issuing the bonds to 5 per cent. of the assessed value of the taxable property lying and being within the limits of the district, as shown by the last assessment thereof for state and county purposes; and he was further bound to know what such assessment in fact amounted to, the constitution pointing out to him the source from which he was bound to acquire the information, to-wit, the official assessment. The purchaser, therefore, knew, or was bound to know, that the school-district could not lawfully incur an indebtedness exceeding in round numbers $2,400. Had the amount of bonds offered to and purchased by the plaintiff or his vendor been below this limit, then it might be that, under the doctrines announced in *Buchanan* v. *Litchfield,* and other cases therein cited, the purchaser might have relied upon the recitals of the bond, if any such existed therein, as showing that the indebtedness did not exceed the constitutional limit, and was therefore valid; but that question does not arise under the facts of this case. The evidence shows that the plaintiff procured these bonds from one D. B. Knight. The latter testifies that he bought the bonds of one Carpenter; that he first bought three or four thousand dollars' worth, and then finding that more could be purchased, he caused an examination to be made into the condition of affairs, found that the district owed about $24,000; *that the recitals in the bonds were all right,* and then purchased the remainder of the bonds, swelling the aggregate up to 13 bonds of $1,000 each, 9 for $500 each, and 3 for $200 each.

Under these circumstances, no matter what the recitals were in the bonds, he knew that the indebtedness of the district largely exceeded the amount which the district could lawfully incur, and he was not, therefore, an innocent purchaser. The same is true of the plaintiff, and therefore, upon this ground, the defendant is not estopped from proving the fact that the bonds held by plaintiff are void by reason of being in excess of the constitutional limitation. In other words, the plaintiff and his vendor, Knight, were bound to know the limit of

the indebtedness which the school-district could lawfully incur, and, as the bonds offered for sale to them exceeded this limit, they then knew, or were bound to know, no matter what the recitals in the bonds set forth, that the school-district could not legally issue these bonds.

Judgment must therefore be entered for defendant.