PEOPLE, PLAINTIFF AND APPELLEE, *v.* RIVERA ESBRÍ ET AL., DEFENDANTS AND APPELLANTS.

## APPEAL from the District Court of Ponce in a Prosecution for Conspiracy.

No. 1119.—Decided July 13, 1918.

CONSPIRACY—INFORMATION—CIVIL SERVICE—PLEADING.—If the mere solicitation of political funds from persons in the civil service is not a crime, neither is a combination of two or more persons to obtain such funds in the manner described a conspiracy. There is no combination to commit a crime when no crime is described.

An information necessarily must contain the facts and cannot be aided by the citation of a penal section. When a conspiracy is alleged the information need only charge the crime "with certainty to a common intent." Nevertheless, operating under that kind of certainty does not warrant the assumption that an "offense against the Civil Service Act" means the solicitation of funds by means of coercion, threats or the like.

It is immaterial that the defendants did not formally demur in the

court below to the *sufficiency of the information.* They were not apprised by the information that they were charged with coercion or other like element.

The facts are stated in the opinion.

*Messrs. Rafael Rivera Zayas, José de J. Tizol, Cayetano Coll Cuchí, Félix Córdova Dávila* and *Miguel Guerra* for the appellants.

*Mr. Salvador Mestre, fiscal,* for the appellee.

MR. JUSTICE WOLF delivered the opinion of the court.

This was an information for conspiracy, which reads as follows:

"The district attorney charges Rafael Rivera Esbrí, Eduardo Wys and Alvaro Santaella Corton with the crime of conspiracy, a misdemeanor, committed as follows: In the city of Ponce, P. R., which forms a part of the Judicial District of Ponce, P. R., between July 1, 1915, and January 31, 1916, the said Rafael Rivera Esbrí, Eduardo Wys and Alvaro Santaella Corton then and there unlawfully, maliciously, wilfully, fraudulently and corruptly conspired, associated, combined and agreed to commit violations of the Act of March 14, 1907, 'To regulate and improve the Civil Service of Porto Rico,' a misdemeanor, by soliciting and obtaining from J. Federico Maura, Enrique Fraile and Juana Clavell, who were then and there public employees, they being graded teachers of public schools and employed in the public schools of Ponce, P. R., a political quota or contribution, or a certain amount of money for political purposes. These acts are prejudicial to the public health and promotive of the perversion or obstruction of justice or the due administration of the laws in force in Porto Rico. This act is contrary to the statute in such case made and provided and against the peace and dignity of The People of Porto Rico."

After the case had been tried in the District Court of Ponce this court handed down its opinion in the case of *People* v. *Wys,* 25 P. R. R. 473, wherein the court held that a solicitation for political funds, unaccompanied by threats, direct or indirect, or accompanied by other like element, did not constitute an offense under section 14 of the Civil Service Act.

Pointing out that this is a conspiracy case, the Govern-- ment, with a strong show of authority, argues that it is un - necessary to allege all the details of the crime which the conspirators were furthering or attempting to further.

Section 62 of the Penal Code provides:

"If two or more persons conspire—

"1. To commit any crime;

"2. Falsely and maliciously to present another for any crime, or to procure another to be charged or arrested for any crime;

"3. Falsely to move or maintain any suit, or proceeding;

"4. To cheat and defraud any person of any property by any means which are in themselves criminal, or to obtain money or property by false pretenses; or

"5. To commit any act injurious to the public morals, or for the perversion or obstruction of justice or due administration of the laws; they are punishable by imprisonment in jail not exceeding one year or by fine not exceeding one thousand dollars, or both."

Thereunder it is evident, and we have so held in *People v. Torrellas,* 10 P. R. R. 514, that the object pursued must be either a criminal act under paragraph 1 or an act specifically prohibited in the other four paragraphs of said section. The information before us purports only to charge a conspiracy to commit a crime, and indeed the act charged would not fall under any paragraph except paragraph 1. The averment that the act is perversive of justice, etc., is not the statement of a fact but the conclusion of the pleader, a consequence, as in any other case of a conspiracy to commit a crime. We have only then to consider whether the information sufficiently describes a conspiracy to commit an offense.

If the mere solicitation of political funds from persons in the civil service is not a crime, neither is a combination of two or more persons to obtain such funds, in the manner described, a conspiracy. There is no combination to commit a crime, for there is then no crime described. The Government, however, contends that the crime is described by

specific reference to section 14 of the Civil Service Act. The attorney for The People is mistaken, inasmuch as the reference only is to "crimes against the civil service." But even if there had been such specific reference, an information necessarily must contain the facts and cannot be aided by a citation of a penal section. The most specific case cited by the *fiscal* (*State* v. *Clemenson,* 99 N. W. 139) was one where the court decided that in a conspiracy to commit adultery it was unnecessary to allege that the defendant knew that the woman in question was married. The *fiscal* is mistaken when he. says that the case decided that no averment to the effect that the woman was married was necessary. Adultery from Biblical .times has had a well-recognized meaning in the language and would almost neccessarily convey to the minds of the defendants that they were charged with knowledge of the married state of the woman. The main thing was the conspiracy and not the crime. We agree that when conspiracy to commit a crime is charged the information need not set up the details of the crime sought to be perpetrated with the particularity of an indictment for the crime itself. In the words of some of the cases cited by the Government the information, when a conspiracy is alleged, need only charge the crime with "certainty to a common intent." But "certainty to a common intent" (defined in 11 C. J. 75) excludes the attempt to show that the words of the information have by inference some other possible meaning. Nevertheless, operating under that kind of certainty does not justify the pleader in asking the court to go beyond the ordinary meaning of words to make inferences against the defendant. One may scan the information in this case and no one who did not know the content of the Civil Service Act could tell that the intention of the *fiscal* was to charge the solicitation by means of coercion, threats, or the like. There is no certainty to a common intent. The theory of the Government, as in

the *Wys* case, *supra,* was that a mere solicitation to obtain political funds from a Government employee was a crime, and the defendants were not notified that they were charged with having exercised threats, coercion, duress, or the like. The case was tried on the theory of solicitation alone.

The evidence in the case tended to show a solicitation in the manner prohibited under section 14 of the Civil Service Act. The defendants, while filing a demurrer, raised no question in the court below of the sufficiency of the information in the regard we have been discussing. The theory of the defense was a traverse. They attempted to deny the truth of the facts as actually set forth in the information. In these circumstances, with the forbidden and bullying nature of the acts proved, the question arose whether the defendants might not be considered to have waived the question of the sufficiency of the information. The answer is, as before, that they were not apprised by the information that they were charged with coercion or other like element. In the language of Mr. Justice Harlan in *Buchanan* v. *Lichfield,* 102 U. S. 293,—

"Waiving all considerations of the case, in its moral aspects, it is only necessary to say that the settled principles of law can not, with safety to the public, be disregarded in order to remedy the hardships of special cases."

This court has gone so far as to reverse a case, the defendant confessing his guilt where no crime was charged. The law punishes offenses. An offense must be charged by the information; only minor defects can be supplied by the proof.

The judgment must be

*Reversed.*

Chief Justice Hernández and Justice Aldrey concurred. Justices del Toro and Hutchison dissented.