EL PUEBLO, DEMANDANTE Y APELADO, *v.* RIVERA ESBRÍ ET AL., ACUSADOS Y APELANTES.

APELACIÓN procedente de la Corte de Distrito de Ponce en causa por delito de conspiración.

No. 1119.—Resuelto en julio 13, 1918.

CONSPIRACIÓN—ACUSACIÓN INSUFICIENTE—LEY DE SERVICIO CIVIL.—Si el mero hecho de solicitar dinero para fondos políticos, de personas en el Servicio Civil, no es delito, tampoco puede la combinación de dos o más personas para obtener tales fondos en la forma descrita en la acusación del presente caso, ser una conspiración. No hay conspiración para cometer un delito cuando no se describe delito alguno.

Una acusación debe necesariamente contener los hechos y no puede dársele más fuerza haciendo cita a un artículo del Código Penal.

Cuando se alega una conspiración es quizás bastante con que la información impute "certeza de una intención común" (*certainty to a common intent*). Sin embargo el actuar bajo esa clase de certeza no justifica que "delitos contra la ley de servicio civil" se entienda como la solicitación de dinero mediante coerción, amenazas, o en otra forma análoga.

No importa que los acusados en este caso no impugnaran formalmente en la corte inferior *la suficiencia de la acusación;* positivamente ellos no fueron informados de que se les imputaba coerción, amenaza, o algún otro elemento semejante, como debió haberse hecho.

Los hechos están expresados en la opinión.

Abogados de los apelantes: *Sres. Rafael Rivera Zayas, José de J. Tizol, Cay. Coll Cuchi, Félix Córdova Dávila y Miguel Guerra.*

Abogado del apelado: *Hon. Salvador Mestre, Fiscal.*

EL JUEZ ASOCIADO SR. WOLF, emitió la opinión del tribunal.

La presente es una acusación por conspiración, que dice así:

"El fiscal formula acusación contra Rafael Rivera Esbrí, Eduardo Wys y Alvaro Santaella Corton, por un delito de conspiración (*misdemeanor*), cometido como sigue: Los citados Rafael Rivera Esbrí, Eduardo Wys y Alvaro Santaella Corton, en la ciudad de Ponce, P. R., que forma parte del Distrito Judicial de Ponce P. R., allá en el espacio de tiempo comprendido entre el día primero de julio de 1915, hasta fines del mes de enero de 1916, de una manera ilegal, maliciosa, voluntaria, fraudulenta y corrupta, conspiraron, se asociaron, combinaron y pusieron de acuerdo para cometer delitos de infracción de la ley aprobada en marzo 14 de 1907, para "Reglamentar y Mejorar el Servicio Civil de Puerto Rico," *misdemeanor*, solicitando y obteniendo de J. Federico Maura, Enrique Fraile y Juana Clavell, que allí, y entonces eran empleados públicos, profesores graduados de instrucción pública, con ejercicio en las escuelas públicas de Ponce, P. R., una cuota o contribución de carácter político, o sea cierta cantidad de dinero para fines políticos, cuyos actos son perjudiciales a la salud pública, encaminados a pervertir u obstruir la justicia o la debida administración de las leyes vigentes en Puerto Rico. Este hecho es contrario a la ley para tal caso prevista y a la paz y dignidad de El Pueblo de Puerto Rico."

Después que se había celebrado el juicio en la Corte de Distrito de Ponce, esta corte dió su opinión en el caso de *El Pueblo* v. *Wys,* 25 D. P. R. 510, en la que la corte resolvió que el solicitar dinero para fondos políticos, sin mediar amenaza directa o indirecta o elemento análogo alguno, no constituía un delito bajo la sección 14 de la Ley del Servicio Civil.

Indicando que éste es un caso por conspiración, y citando gran número de autoridades, el Gobierno arguye que es innecesario alegar todos los detalles del delito que los conspiradores estaban preparando o intentaban preparar.

El artículo 62 del Código Penal dispone lo siguiente:

"Si dos o más personas conspiraren (1) para cometer algún crimen; (2) para acusar falsa y maliciosamente a otra persona de algún crimen, o conseguir que se denuncie o arreste a otra por algún crimen; (3) para promover o sostener algún pleito, causa o proceso infundadamente; (4) para estafar y defraudar a alguna persona en sus bienes por medios en sí criminales, u obtener dinero o bienes

valiéndose del engaño; y (5) para cometer algún acto perjudicial a la salud pública, o encaminado a pervertir u obstruir la justicia o la debida administración. de las leyes, tales personas serán penadas con cárcel por un término máximo de un año, o multa máxima de mil dollars o ambas penas.''

Bajo ese artículo es evidente, y así lo hemos resuelto en el caso de *El Pueblo* v. *Torrellas,* 10 D. P. R. 542, que el fin perseguido .debe ser o un acto criminal de acuerdo con el número 1, o uno de los actos específicamente prohibidos en los otros cuatro números de dicho artículo. La acusación ante nosotros tiende sólo a imputar una conspiración para cometer un crimen, y en realidad el acto imputado no puede estar comprendido sino en el número 1. La manifestación de que el acto tiende a pervertir la justicia, etc., no es la expresión de un hecho sino una conclusión del que alega, una consecuencia, como en cualquier otro caso, de una conspiración para cometer un crimen. Por tanto sólo nos resta considerar si la acusación imputa suficientemente una conspiración para cometer un delito.

Si el mero hecho de solicitar dinero para fondos políticos, de personas en el servicio civil no es un delito, tampoco puede la combinación de dos o más personas para obtener tales fondos en la forma descrita, ser una conspiración. No hay combinación para cometer un delito puesto que no se describe delito alguno. El Gobierno, sin embargo, insiste en que el delito ha sido descrito haciendo referencia exacta a la sección 14 de la Ley del Servicio Civil. El abogado del Pueblo está en un error puesto que sólo se hace referencia a ''delitos contra el servicio civil.'' Pero aún cuando existiera tal referencia exacta, una acusación debe necesariamente contener los hechos y no puede dársele más fuerza haciendo cita de un artículo penal. El caso más específico citado por el fiscal, *State* v. *Clemenson,* 99 N. W. 139, fué uno en el que la corte resolvió que en una conspiración para cometer adulterio era innecesario alegar que el acusado sabía que la mujer de que se trataba era casada. El fiscal está en un error al decir

que en ese caso se resolvió que no era necesaria la alegación de que la mujer era casada. El adulterio, desde los tiempos bíblicos, ha tenido un significado bien establecido en el lenguaje y casi necesariamente debía llevar a la mente de los acusados la idea de que se les imputaba el conocimiento de que la mujer era casada. Lo principal era la conspiración y no el delito. Convenimos que en una conspiración para cometer un delito la acusación no tiene que expresar los detalles del crimen que se trataba de cometer con la misma particularidad que una acusación por el crimen en sí. Usando las mismas palabras de algunos de los casos citados por el Gobierno, cuando se alega una conspiración es bastante con que la información impute "certeza de una intención común" (*certainty to a common intent*). Pero la "certeza de una intención común" (definida en 11 C. J. 75) exclüye el tratar de demostrar por inferencia que las palabras de la acusación tienen otro significado. Sin embargo, el actuar bajo esa clase de certeza no justifica el que quien hace la alegación pida a la corte que vaya más allá del significado corriente de las palabras para hacer inferencias en contra del acusado. Uno que no conozca el contenido de la ley del servicio civil puede leer la acusación en este caso, y no sabría nunca que la intención del fiscal era imputar la solicitación de dinero mediante coerción, amenazas, o en otra forma análoga. No hay certeza de una intención común. La teoría del Gobierno, como en el caso de Wys, *supra,* fué que la mera solicitación para fondos políticos, de un empleado del Gobierno, constituía un crimen, y los acusados no fueron notificados de que se les acusaba de haber ejercitado amenazas, coerción, coacción, o medios semejantes. El juicio se celebró bajo la teoría de una mera solicitación.

La prueba en este caso tendía a demostrar la solicitación en la forma prohibida por la sección 14 de la ley del servicio civil. Los acusados, aunque presentaron una excepción previa, no levantaron en la corte inferior la cuestión de la sufi-

ciencia de la acusación en el sentido que hemos estado discutiendo. La teoría de la defensa era una negativa. Ellos trataron de negar la verdad de los hechos tal como aparecían de la acusación. En estas circunstancias, y habiendo probado actos tan delictivos y abusivos, surgió la cuestión de si no debía considerarse que los acusados habían renunciado a la cuestión de la suficiencia a la acusación. La contestación es como antes, que ellos no fueron informados por la acusación de que se les imputaba coerción o algún otro elemento semejante. Para usar las palabras del Juez Sr. Harlan en el caso de *Buchanan* v. *Litchfield*, 102 U. S. 293.

"Renunciando a todas las consideraciones del caso, en su aspecto moral, basta decir que los principios establecidos de ley no pueden, con seguridad para el público, ser desconocidos con el fin de allanar las dificultades de casos especiales."

Esta corte ha llegado hasta a revocar un caso en que el acusado confesaba su culpabilidad porque en él no se imputaba delito alguno. La ley castiga los delitos; la acusación debe imputar un delito. Sólo pueden subsanarse con la prueba los defectos de menor importancia.

La sentencia debe ser revocada.

*Revocada la sentencia apelada.*

Jueces concurrentes: Sres. Presidente Hernández y Asociado Aldrey.

Los Jueces Asociados Sres. del Toro y Hutchison disintieron de la opinión del tribunal.