## COUNTY OF MOULTRIE *v.* ROCKINGHAM TEN-CENT SAVINGS-BANK.

1. An act of the general assembly of the State of Illinois, approved March 26, 1869, authorized the board of supervisors of Moultrie County to subscribe to the stock of the Decatur, Sullivan, and Mattoon Railroad Company, to an amount not exceeding $80,000, and to issue bonds therefor when the road should be opened for traffic between the city of Decatur and the town of Sullivan.   In December, 1869, the board of supervisors ordered that a subscription to the stock of that company, in the sum of $80,000, be made by the county; and that, in payment therefor, bonds payable to said company should be issued and delivered to it, when the road should be so open for traffic. No subscription was actually made on the books of the company; but its president and clerk entered of record the resolution of the board of supervisors, and the company, by a contract made April 15, 1870, appropriated the bonds that would be received in payment of that subscription.   The bonds were delivered to the company and the road was so open to traffic early in 1873.   By the constitution of the State, which took effect July 2, 1870, counties were prohibited from subscribing to the capital stock of any railroad or private corporation, or from making donations to or loaning their credit in aid of such corporations.   *Held,* that whether the action of the board in December, 1869, be in substance and legal effect a subscription, or only an undertaking to subscribe which was accepted by the company, a valid contract existed between the county and the company, which, when the new constitution took effect, authorized the subsequent delivery of the bonds.

2. The board of supervisors, acting under the authority of the act in question, could bind the county by a resolution, which, in favor of private persons interested therein, might, if so intended, operate as a contract; and the obligation thereby assumed would continue in force after July 2, 1870, although the power to *enter* into such a contract was, *after that date,* withdrawn.

3. The holder of the bonds purchased them before their maturity, and without notice of any defence.   They recite that they are issued by the county in pursuance of the subscription of the capital stock of said company, made by the board of supervisors of the county, December, 1869, in conformity to the provisions of an act of the general assembly above mentioned.   The purchaser was thus assured that the subscription was made when they had authority to make it; and it would be tolerating a fraud to permit the county, when called upon for payment, to set up that it was not made until after July 2, 1870, when their authority had expired.

4. The constitution of a State cannot impair the obligation of a contract; but the Constitution of Illinois declares that the contracts of bodies corporate shall continue to be as valid as if it had not been adopted. The power to subscribe carried with it authority to issue bonds for the sum subscribed, and, the subscription being valid, the bonds are equally so.

ERROR to the Circuit Court of the United States for the Southern District of Illinois.

The facts are stated in the opinion of the court.

*Mr. John R. Eden* and *Mr. W. J. Henry* for the plaintiff in error.

*Mr. S. M. Cullom, contra.*

MR. JUSTICE STRONG delivered the opinion of the court.

This case differs very materially from *Town of Concord* v. *Portsmouth Savings-Bank, supra*, p. 625. We there held that the bonds were void because the legislative authority to issue them as a donation to the railroad company had been annulled by the constitution of the State before the donation was made. In the present case the authority exercised was given to the county by the act of March 26, 1869, incorporating the railroad company. The tenth section of the act was as follows: —

" The board of supervisors of Moultrie County are hereby authorized to subscribe to the capital stock of said company, to an amount not exceeding $80,000, and to issue the bonds of the county therefor, bearing interest at a rate not exceeding ten per cent per annum, said bonds to be issued in such denominations and to mature at such times as the board of supervisors may determine : *Provided*, that the same shall not be issued until the said road shall be opened for traffic between the city of Decatur and the town of Sullivan aforesaid."

No approving popular vote was required.

It is not to be doubted that this section gave to the county complete authority to make a subscription to the capital stock of the company. The power was fettered by no conditions or limitations, except as to the amount which might be subscribed ; but the payment of the subscription was directed to be postponed until the railroad should be opened. And, of course, as a greater power includes every constituent part of it, the legislative act empowered the board of supervisors to agree to sub-

scribe preparatory to an actual subscription.  The power thus granted was never revoked, unless it was by the new constitution of the State, which did not take effect prior to July 2, 1870.  Whatever was done in pursuance of the power before that time, if any thing was, could not be affected by the constitution, subsequently adopted.  Subscriptions, or contracts to subscribe, made in pursuance of it before it was abrogated, remained binding; for a constitution can no more impair the obligation of a contract than ordinary legislation can.  It must be conceded, that, had no subscription been made, or engagement to subscribe entered into, before the new constitution took effect, none could have been made after.  But the special finding of facts shows that one was made in 1869.  On the 16th of December of that year, the board of supervisors met and informally resolved to subscribe $80,000 to the capital stock of the railroad company; and the resolutions were referred to a lawyer, to be put in form before being recorded on the records of the board.  They were accordingly prepared from minutes furnished by the chairman of the board, and entered by the clerk upon the records, as of the date of the December meeting of the board, and duly attested.  This must have been done prior to the first Tuesday in March, 1870.  The record, as it appears under date of Dec. 14, 1869, is as follows: —

" And it is further ordered by the board of supervisors of Moultrie County, that, under and by virtue of the authority conferred upon said board by an act approved March 26, A.D. 1869, entitled ' An Act to incorporate the Decatur, Sullivan, and Mattoon Railroad Company,' the county of Moultrie subscribed to the capital stock of the Decatur, Sullivan, and Mattoon Railroad Company the sum of $80,000 to aid in the construction of a railroad by said company, in pursuance of their charter.

" And be it further ordered by the board of supervisors aforesaid, that, when said railroad shall be ' open for traffic ' between the. city of Decatur and the town of Sullivan aforesaid, there be issued $80,000 of the bonds of said county, in denominations of not less than $500, payable to said company, drawing interest, to be paid annually, at the rate of eight per cent per annum; the principal to be due and payable ten years after date, or sooner, at the option of the county; and that said bonds be delivered to said railroad company in full payment of the subscription of said county so made as aforesaid."

It is true, there was no further order of this board to enter the resolutions of record, but it was the clerk's duty to make the entry. The substance of them had been adopted. They required no further action except to put them in form. No further action appears to have been contemplated. They remain of record still, and the board has never taken any action to correct the record. On the contrary, it has been recognized by subsequent action. At the December meeting of 1872, a special committee was appointed to examine the records of subscriptions of railroad donations, and report. The committee did report on the 25th of December, 1872, that the subscription of $80,000, under the act of the general assembly of March 26, 1869, to aid in the construction of the Decatur, Sullivan, and Mattoon Railroad, was in accordance with law. Under this action of the board, and the report of the committee, the bonds were delivered. It is impossible, therefore, to doubt that the resolutions adopted in December, 1869, as recorded, must be treated as the action of the board at that time. And, if so, they amounted to a subscription to the stock of the company, and created an obligation for the payment of the subscription in county bonds. It is true no subscription was made *on the books* of the railroad company until July, 1871, when one was made by Mr. Titus, chairman of the board, without any express authority, and then made for the purpose of enabling him to vote at an election. But a subscription on the books of the company was unnecessary, for that which amounted to a subscription had been made in December, 1869. The authorized body of a municipal corporation may bind it by an ordinance, which, in favor of private persons interested therein, may, if so intended, operate as a contract, or they may bind it by a resolution, or by vote clothe its officers with power to act for it. The former was the clear intention in this case. The board clothed no officer with power to act for it. The resolution to subscribe was its own act; its immediate subscription. *Western Saving-Fund Society* v. *The City of Philadelphia*, 31 Penn. St. 174; *Sacramento* v. *Kirk*, 7 Cal. 419; *Logansport* v. *Blakemore*, 17 Ind. 318. In *The Justices of Clarke County Court* v. *The Paris, Winchester, and Kentucky River Turnpike Company*, 11 B. Mon. 143, it was ruled that an order of the County

Court, by which it was said the court subscribed, on behalf of Clarke County, for fifty shares of stock in the turnpike company, if concurred in by a competent majority of the magistrates, was itself a subscription, and bound the county. There was no subscription on the books of the company, but the Court of Appeals said, "We cannot, therefore, regard this order as a mere offer or pledge to subscribe the fifty shares in this particular road, but as actually taking, and, in substance and legal effect subscribing for, that number of shares." So in *Nugent* v. *The Supervisors of Putnam County*, 19 Wall. 241, it was said, that to constitute a subscription by a county to stock in a railroad company, it is not necessary that there be an act of manual subscribing on the books of the company. These cases lead directly to the conclusion that the action of the board of supervisors in December, 1869, was in substance and in legal effect a subscription.

And if this conclusion could not be reached, it would make but little difference to the present case; for it could not be doubted that the action of the board was at least an undertaking to subscribe, and this was assented to or accepted by the railroad company. The resolutions were entered of record by the clerk and president of the railroad company; and the company made an appropriation of the bonds to be received in payment for the subscription, by a contract made on the 15th of April, 1870. In either aspect of the case, therefore, there was an authorized contract existing between the county and the railroad company when the new constitution came into operation. No matter whether the contract was a subscription or an agreement to subscribe, it was not annulled or impaired by the prohibitions of the constitution. The delivery of the bonds was no more than performance of the contract. For these reasons, it is in vain to appeal to the decisions made in *Aspinwall* v. *The County of Davies*, 22 How. 364, and *Town of Concord* v. *Portsmouth Savings-Bank*, *supra*, p. 625. In neither of those cases was there any contract made before the authority to make one was annulled. We do not assert that the constitutional provision did not abrogate the authority of the board of supervisors to make a subscription for railroad stock. On the contrary, we think it did. But we hold that contracts made under the

power while it was in existence were valid contracts, and that the obligations assumed by them continued after the power to enter into such contracts was withdrawn. The operation of the constitution was only prospective. Indeed, it is expressly ordained in its schedule that "all rights, actions, prosecutions, claims, and contracts of the State, individuals, or bodies corporate, shall continue to be as valid as if this constitution had not been adopted.". It is hardly necessary to say, that, under the act of the general assembly, the authority to make a subscription was coupled with an authority and a duty to issue county bonds for the sum subscribed. No action of the board was needed after the subscription was made.

This disposes of the only material question in the case. There is, however, another consideration that is worthy of notice. The findings of the court are, that the plaintiff below is a purchaser of the bonds for a valuable consideration, having purchased them before their maturity, and without notice of any defence. They were executed by the president of the board of supervisors and the county-clerk. They recite that they are issued by the county of Moultrie, "in pursuance of the subscription of the sum of $80,000 to the capital stock of the Decatur, Sullivan, and Mattoon Railroad Company, made by the board of supervisors of said county of Moultrie, in December, A.D. 1869, in conformity to the provisions of an act of the general assembly of the State of Illinois, approved March 26, A.D. 1869."

Now, if it be supposed that the purchaser of bonds with such recitals was bound to look further and inquire what was the authority for the issue, where was he to look? Had he looked to the act of the general assembly of March 26, 1869, he would have found plenary authority for a stock subscription, and for the issue of bonds in payment thereof. If he was bound to know that the constitutional provision terminated that authority after July 2, 1870, he knew that any subscription made before that time continued binding, notwithstanding the constitution, and that bonds issued in payment of it were, therefore, lawful. If, then, he had inquired whether a subscription had been made before July 2, 1870, at the only place where inquiry should have been made, — namely, at the records of the

board, — he would have found an order to subscribe, equivalent to a subscription made, in December, 1869, corresponding with the assertions of the recitals, and declared by them to have been a subscription. He could have made inquiry nowhere else with any prospect of learning the truth. Every step he could have taken assured him that the recitals were true. How, then, can the county be permitted to set up against a *bona fide* holder of the bonds, that the authority to make a subscription with all its legitimate consequences had expired before the subscription was made, in the face of the recitals and of the county records ? Whether it had expired was a matter of fact, not of law; and it was peculiarly, if not exclusively, within the knowledge of the board of supervisors. After having assured a purchaser that their subscription was made in December, 1869, when they had power to make it, it would be tolerating a fraud to permit the county to set up, when called upon for payment, that it was not made until after July 2, 1870, when their authority expired.

It is unnecessary to say more. Some matters which we have not noticed were assigned as errors, but they were not mentioned in the argument, and, in our opinion, they exhibit no error in the court below.                    *Judgment affirmed.*

MR. JUSTICE MILLER, MR. JUSTICE DAVIS, and MR. JUSTICE FIELD, dissented.