## CHANDLER *v.* TOWN OF ATTICA.

(*Circuit Court, N. D. New York.* November 3, 1883.)

1. MUNICIPAL BONDS—"TAX-PAYERS," UNNECESSARY ALLEGATIONS IN PETITION BY.
   A petition alleging that the signers are a majority of the tax-payers of a certain town, *held* not invalidated by the omission after the word " tax-payers ' of the words "not including those taxed for dogs or highway tax only," found in the first section of the bonding act, where the legislature has, in the same section, defined the word " tax-payer" to mean a person taxed for real or personal property, " not including those taxed for dogs or highway tax only." It was not necessary to repeat the definition and the exclusion each time the word was used. It meant what the act declared it to mean, and no explanation or qualification was necessary.
   See discussion of the same subject in *Rich* v. *Town of Mentz,* 18 FED. REP. 52.

2. SAME—REISSUE OF BONDS—WAIVER OF DEFECTS IN OLD BONDS.
   When a town, acting through the properly constituted authorities, has for its own benefit destroyed its old bonds and issued new ones in their stead, it will not be allowed to urge the same defenses which might have been interposed to the surrendered obligations : these defenses and defects the holder of the new bonds has a right to assume were settled and waived by the canceling of the old bonds and issue of the new

Motion for New Trial.
*Redfield & Hill,* for plaintiff.

*Cogswell & Bentley,* for defendant.

COXE, J. The plaintiff sues upon interest warrants alleged to have been made and issued by the defendant. At the June circuit the plaintiff recovered a verdict. The defendant now moves, upon a case and exceptions, for a new trial. On the twelfth day of August, 1873, certain tax-payers of the town of Attica presented a petition to the supreme court of the state of New York praying for authority to bond the town in the sum of $20,000 in aid of the Attica & Arcade Railroad Company, "pursuant to the provisions of chapter 907 of the Laws of   *   *   *   1869, and the act or acts amendatory thereof." Chapter 925, Laws 1871, amending the act of 1869, provides (section 1) that "whenever a majority of the tax-payers of any municipal corporation in this state, who are taxed or assessed for property, *not including those taxed for dogs or highway tax only,*   *   *   *   shall make application to the county judge,   *   *   *   by petition, verified by one of the petitioners, setting forth that they are such majority of tax-payers," etc. The same act defines the word "tax-payer" to mean "any person or corporation assessed or taxed for property, *   *   *   not including those taxed for dogs or highway tax only.*" The petition in this case did not contain the italicized words. The court, pursuant to the provisions of chapter 883, Laws 1872, referred it to a referee to take proof of the facts set forth in the petition, and report the evidence, with his conclusion of law and fact, to the court. The referee found that "the aggregate number of tax-payers   *   *   *   who are taxed or assessed upon the last preceding tax-list or assessment roll of said corporation, *not including those taxed for dogs or highway tax only,* is 486; and that the number of tax-payers   *   *   *   joining in the said petition, who are taxed or assessed for property upon the said   *   *   *   roll, *not including those taxed for dogs,* etc., is 259; being 15 in excess of a majority." This report was presented on the twentieth day of August, 1873, and, based upon its findings and conclusions, the court adjudged and determined that the necessary majority in number and amount had united in the petition. Commissioners were appointed, and the bonds were issued in the spring of 1874. On the twenty-third day of May, 1880, a majority of the commissioners met at the village of Attica and resolved that the bonded indebtedness of the town, principal and interest, should be retired and funded, and new 5 per cent. bonds issued therefor, as authorized and provided by chapters 75 and 317 of the Laws of 1878, as amended and supplemented by chapters 12 and 146 of the Laws of 1880. On the twentieth day of August, 1880, the commissioners filed a certificate, as required by law, stating that they had taken up and canceled all the bonds of the town issued in aid of the Attica & Arcade Railroad, amounting to $25,700, and had issued new bonds therefor. The entire issue of the new bonds was purchased at par by George K. Sistare's Sons, and the bonds in suit were by them sold, at a premium, to the plaintiff.

It is argued for the defendant that because of the omission of the words "not including those taxed for dogs and highway tax only" from the petition, the court never acquired jurisdiction, and all the subsequent proceedings were null and void. In order to maintain this view it is necessary to reject the definition given to the word "taxpayer" in the first section of the statute. If the word means what the act declares it to mean, the negative statement referred to was not required, and its presence would have rendered the pleading tautological and inartistic in a marked degree. Its use would be tantamount to the absurdity of the citizens of this state presenting a petition commencing, "We, the citizens of New York, not including the citizens of Massachusetts." No good reason can be assigned which required the pleader to repeat the statutory definition on each occasion that he used the word. The clause referred to is stated parenthetically. It appears nowhere except in the places mentioned. Elsewhere in the act the word "tax-payer" is used without any qualifying words; for instance, in the second section no reference whatever is made to the excluded persons, the word "tax-payer" being used as alone sufficient to convey the meaning of the law-makers. After taking the required proof, the judge shall determine—what? That the petitioners "represent a majority of the *tax-payers* of said municipal corporation;" not that they represent a majority of the tax-payers, "not including those taxed for dogs," etc. And yet can it be seriously maintained that the omission of these words made it obligatory upon the judge to take those taxed only for dogs or highways into consideration in arriving at his conclusions? Certainly not; and this is so because of the definition, and for that reason alone. If "tax-payer" means a person taxed for property other than dogs, etc., in the second section, why does it not have the same meaning in the first section? Is it not fair to assume that if the presence of the disputed clause in the petition was intended to be a condition precedent to the regularity of the proceedings, that some mention would have been made of the subject when the legislature came to prescribe the contents of the more formal and important document —the judgment? The object of the law-makers was to exclude those taxed for dogs and highways only from participating in the bonding proceedings. This was accomplished clearly and effectually by the definition of the word "tax-payer." Nothing else was needed.

But this question was fully considered in the recent case of *Rich* v. *Town of Mentz*, 18 FED. REP. 52, and it is perhaps unnecessary to reiterate what was there said. The court should not, unless the argument is very clear and unanswerable, permit a narrow construction in favor of a point so technical to destroy, in the hands of an honest holder, obligations which have been solemnly issued, and repeatedly recognized as valid and binding by the obligors.

It cannot be said, as in the *Mentz Case*, that the recent decision in *Cowdrey* v. *Caneadea*, 16 FED. REP. 532, is a controlling authority.

In that case, although the act of 1871 was in force, each step was taken under the act of 1869. The petition, the judgment, and the bonds themselves *state affirmatively* that all the proceedings were under the original act, wholly ignoring the amendments of 1871. In the case at bar, on the contrary, beginning with the petition, it is apparent that the bonding was accomplished with full knowledge of the provisions of the amendatory acts; and, as has been seen, the referee, upon whose report the adjudication was based, expressly finds that the requisite number, excluding the proscribed persons, had petitioned. The learned judge who wrote the opinion in the *Caneadea Case* expressly declines to decide whether the omission of the words referred to from the petition would have rendered the subsequent proceedings void provided they appeared in the judgment.

There is nothing of which to predicate the assumption that the bonds would have been declared invalid had there been in that case an affirmative finding that no person had been counted who was "taxed for dogs or highway tax only." A person examining the record would then have found that every requirement of the statute, even assuming defendant's construction to be the correct one, had been fulfilled. The proof being sufficient and the finding correct, the judgment, by a familiar rule, should not be permitted to fail by reason of an inconsequential omission in the pleading.

But a much stronger case of ratification and estoppel is here presented than in either of the cases mentioned. In addition to the facts there appearing, these bonds, upon their face, contain the statement, *inter alia*, that they are funding bonds of the town of Attica. They then proceed in the following words:

"Whereas, the said town of Attica has heretofore *issued its bonds*, to the amount of $20,000, *in conformity with the laws of the state of New York*, authorizing municipal corporations to issue their bonds, *and which bonds constitute the sole bonded indebtedness* of said town, and still remain wholly unpaid; and—

"Whereas, the said town of Attica, by the officers or boards who were authorized to issue such outstanding bonds, is desirous of retiring said bonds, now bearing interest at the rate of seven per centum per annum, and which bonds have not yet become due, by the issuance of bonds for the same amount, bearing a lower, to-wit, five per centum per annum, rate of interest, pursuant to the provision of the act of the legislature of the state of New York, * * * passed March 25, 1878, and the act * * * in amendment thereof, passed May 22, 1878.

"Now, therefore, the said town of Attica, to effect such object, acknowledges itself indebted to the bearer in the sum of $1,000, *in consideration of a bond above mentioned* of like amount, retired and delivered up to said officers * * * to be canceled, which sum the said town of Attica promises to pay to the holder hereof. * * *

"In testimony whereof, the undersigned, duly-appointed commissioners of said town, * * * have," etc.

It is doubtless true that if the original bonds were null and void, no subsequent act on the part of commissioners who were never le-

gally appointed could validate them. It is also true that the utterance of the funding bonds was sufficient to waive the gravest irregularities, and estop the town from taking advantage of defenses founded upon the mistakes of its own agents. *Town of Aroma* v. *Auditor of State*, 15 FED. REP. 843. It was, in effect, saying to the bondholders: "Although there are defenses to these bonds, we prefer to avoid litigation, and if you will extend the time of payment and accept a lower rate of interest we will reacknowledge our indebtedness, and issue an obligation to which no defense can be urged." The commissioners were appointed by the supreme court of the state. For seven years they had acted by virtue of that appointment, exercising the powers and discharging the duties of their office. Certainly they were *de facto* officers. No attempt had been made to impeach their title or question their authority. The funding act of 1878 conferred very broad and *quasi* judicial powers. Pursuant to its provisions the commissioners proceeded to determine what the *bonded indebtedness* was, call it in, and issue new bonds bearing less interest. Their power was restricted in two particulars. They could not act—*First*, unless the old bonds were retired and new ones bearing less interest substituted; and, *second*, if the old bonds had been declared invalid by the final judgment of a competent court. Neither restriction was present in this case. Irregularities and errors there may have been, but all these were waived and swept out of existence when the town, for its own benefit, destroyed the old bonds and issued new ones in their place. It would be inequitable and unjust to permit a debtor who has thus induced his creditor to accept a less valuable security, to urge the same defenses which might have been interposed to the surrendered obligation—defenses which the creditor had a right to assume were settled and waived when he consented to the change. No holder of municipal bonds would agree to exchange them if in doing so he must take the risk of all irregularities in the new proceedings in addition to those already existing. Although the facts are somewhat dissimilar, the language of the supreme court in *County of Jasper* v. *Ballou*, 103 U. S. 745, is applicable to the present discussion. The chief justice says:

"Whether these [old] bonds were valid was, so far as any direct decisions were concerned, an open question, and certainly not free from doubt. Under these circumstances the question was directly put to the people of the county, in a manner authorized by law, whether they would recognize these bonds as 'binding and subsisting legal obligations,' and issue in lieu of them other bonds having 20 years to run and bearing 7 per cent. interest instead of 10 ; and they by their votes said they would. * * * If the people intended to rely on their defenses to the old bonds, then was the time for them to speak and by their vote say that they would not recognize them as binding obligations. By voting the other way, they, in effect, accepted them as legal and subsisting, * * * and said to the holders if their proposition was accepted, no question of illegality would be raised. Their offer having been accepted, they are now estopped from insisting upon an irregularity which they have by their votes voluntarily waived, with a full knowledge of the facts. * * * As

was·very properly said below by the learned circuit judge, 'there must be an end of these contests and defenses some time or other.'"

In addition to the authorities cited upon these questions in *Rich* v. *Mentz,* see the following: *County of Moultrie* v. *Rockingham Bank,* 92 U. S. 631; *Marcy* v. *Oswego,* Id. 637; *County of Warren* v. *Marcy,* 97 U. S. 96; *Com'rs* v. *Bolles,* 94 U. S. 104.

In the light of all the facts and circumstances I cannot think that the-defendant is in a position to avail itself of the defense based upon the alleged defect in the original proceedings.

The point disputing the sufficiency of the proof of the bonds, and of the identity of the coupons, is not well taken, in view of the allegations of the answer, the stipulation of the defendant's attorneys, the evidence of Mr. Sistare, and the admission at folio 176, which the defendant accepted and used as part of its case.

I have examined the other exceptions argued, and think none of them well founded.   Motion for new trial denied.