## MOULTON *v.* CITY OF EVANSVILLE.

*(Circuit Court, D. Indiana.* November 2, 1885.)

1. MUNICIPAL BONDS—AID TO FOREIGN RAILROAD COMPANY.
    The mere fact that a railroad company is a foreign corporation, and that its road terminates at a point in another state, from which it runs a line of boats to a city issuing its bonds in aid of such road, affords no ground for a constitutional objection to the grant of power by the legislature to such city to subscribe to the stock of the company.

2. SAME—RECITALS—ESTOPPEL—BONA FIDE HOLDERS.
    A recital upon the face of city bonds that they were issued "in pursuance of an act of the legislature, and an ordinance of the city council passed in pursuance thereof," concludes the city as to any irregularity in carrying into execution the power granted to subscribe to the stock and issue the bonds; the alleged irregularity being the lack of a petition by freeholders to the common council to make the subscription.

3. SAME—RECITAL OF COMPLIANCE WITH VALID AND INVALID STATUTES.
    When such bonds contain a recital to the effect that they were issued in pursuance of a specified statute, and of a later act amendatory of the first, and the later act is invalid, the purchaser without notice to the contrary may presume that the requirements of the original statute were complied with.

4. SAME—EFFECT OF PAYMENT OF INTEREST.
    While the payment of interest will not validate a municipal bond issued without authority of law, in cases where the objection is not a want of power to issue, but of compliance with a condition in respect to which there may be an estoppel by recital or other act of the city officials, such payments of interest ought to have great weight.

Demurrer to Declaration.

*Geo. A. Sanders,* for plaintiff.

*McDonald, Butler & Mason* and *J. B. Rucker,* for defendant.

WOODS, J.  This demurrer brings into question the validity of two series of negotiable bonds made by the city of Evansville to the Evansville, Henderson & Nashville Railroad Company and to the Evansville, Carnie & Paducah Railroad Company, upon subscription to the capital stock of said companies in the sum of $300,000 to each company.  The bonds issued to the first-named company bear date May 1, 1868, and each contains the following recital:

"This being one of a series of three hundred bonds of like amount, tenor, and date issued by the city of Evansville in payment of a subscription to the Evansville, Henderson & Nashville Railroad Company, made in pursuance of an act of the legislature of the state of Indiana, and ordinances of the city council of said city passed in pursuance thereof."

The other series made to the other company bears date August 15, 1873, and purports to have been issued "by virtue of an act of the general assembly of the state of Indiana, entitled 'An act granting to the citizens of the town of Evansville, in the county of Vanderburg, a city charter,' approved January 27, 1847, and by virtue of an act of the general assembly of the state of Indiana, amendatory of said act, approved March 11, 1867, conferring upon the city council of said city power to take stock in any company organized for the purpose of making a road of any kind leading to said city; and by virtue of a

resolution of the city council of said city, passed October 4, 1869, ordering an election of the qualified voters of said city upon the question of subscribing $300,000 to the capital stock of the Evansville, Carnie & Paducah Railroad Company, and said election held on the thirteenth day of December, 1869, which resulted in a legal majority in favor of such subscription; and by virtue of a resolution of the city council, passed May 23, 1873, ordering the issue of the bonds of the city of Evansville (of which this bond is a part) to an amount not exceeding $300,000, bearing interest at the rate of 7 per cent. per annum, for the purpose of paying the subscription authorized as above." Using substantially the language of these recitals, the declaration charges the execution and delivery of the bonds to the different railroad companies, and that for 10 years thereafter upon the second series, and upon the first, for 12 years, the city made payment of the semi-annual interest coupons as they became due; that the plaintiff, a citizen of the state of Maine, in the usual course of his business, purchased for value, and before they were due, the coupons sued on. It is also alleged that the Evansville, Henderson & Nashville Railroad was duly constructed to Henderson, and a line of steam-boats run by the railroad company, in connection with the railroad, between Henderson and Evansville until a recent date, when the railroad was extended to the latter city. An exhibit is also made a part of the declaration, showing (as is alleged) the entire record of the proceedings of the common council of Evansville in respect to each series of bonds; from which record it appears that elections were had in compliance with the act of March 11, 1867, in favor of the proposed subscriptions, and that the orders of the common council for the issue of the bonds were based upon these elections. No petition of freeholders in compliance with the act of 1847, the original charter of the city, is shown or alleged.

The legislative act of March 11, 1867, which, it is claimed, is referred to in both series of bonds,—expressly in one of them,—was intended to amend the first section of an act approved December 21, 1865, the latter act having been passed for the purpose of amending section 30 of the act of January 27, 1847, which constitutes the charter of the city of Evansville; but under numerous decisions of the Indiana supreme court, both of the amendatory acts are invalid; the first, because the entire amended section 30 is not set out in the act, but only the amended clause; and the second, because an act amendatory of an invalid act is of no effect. *Turnpike Co.* v. *State,* 28 Ind. 382; *Draper* v. *Falley,* 33 Ind. 465; *Town of Martinsville* v. *Frieze,* Id. 507; *Town of Edinburg* v. *Hackney,* 54 Ind. 83; *Town of Brazil* v. *Kress,* 55 Ind. 14; *Cowley* v. *Town of Rushville,* 60 Ind. 327; *Carr* v. *Town of Fowler,* 74 Ind. 590. It follows that the act of 1867, (including that of 1865,) and the allegations in the complaint, and the recitals in the bonds in respect thereto, including the alleged elections held in compliance therewith, must be put out of view. This done, the question

arises whether or not the bonds in question might have been lawfully issued under the act of 1847, and are valid in the hands of an innocent purchaser, notwithstanding the fact that the petition of freeholders required by that act was wanting, in each instance, and the subscriptions were ordered in pursuance of elections held under the law of 1867, which, doubtless, the common council supposed to be valid, and which, if valid, substituted an election for the petition required by the former law. All the facts in this respect the plaintiff has set up in the amended complaint, in pursuance of an agreement between counsel, in order to present upon this demurrer the merits of the case. But while the complainant, standing in this shape, admits a failure of the city to comply with the law in the respect stated, I suppose it is not to be understood that the plaintiff bought his coupons with actual knowledge of the irregularity. It is alleged that he purchased for value, in the usual course of business, before the coupons were due; and if this does not mean without actual notice of any vice in the bonds or irregularity in their issue, an amendment to that effect may be inserted, and will be regarded as made.

The only provision of the original charter pertinent to the question is the fortieth clause of section 30, which reads in this wise:

"*Fortieth.* To take stock in any chartered company for making roads to said city, or for watering said city, and in any company authorized or empowered by the board of commissioners of Vanderburg county to build a bridge on any road leading to said city; and to establish, maintain, and regulate ferries across the Ohio river from the public wharves of said city: provided, that no stock shall be subscribed or taken by the common council in such company, unless it be on petition of two-thirds of the residents of said city who are freeholders of the city, distinctly setting forth the company in which stock is to be taken, and the number and amount of shares to be subscribed: and provided, also, that in all cases where such stock is taken, the common council shall have power to borrow money, and levy and collect a tax on all real estate, (either inclusive or exclusive of improvements, at their discretion,) for the payment of said stock."

It is contended that the subscription to the stock of the Evansville, Henderson & Nashville Railroad Company was not within the scope of this provision, because (1) that company, as the court must know judicially, was and is a foreign corporation, organized under the laws of Kentucky; (2) the proposed road was not to come to Evansville, nor to any point nearer than Henderson, in Kentucky, (10 or 12 miles away;) and (3) the subscription was made without the requisite petition of resident freeholders. The mere fact that the company was a foreign corporation, and the road to be constructed in another state, affords no ground for a constitutional objection to the grant of power by the legislature to the municipality to subscribe to the stock of the company, (*Railroad Co.* v. *County of Otoe*, 16 Wall. 667;) and the fact that the proposed road was to terminate at Henderson, since it was to connect there with a line of boats to be run between that point and Evansville, did not, I think, take the enterprise be-

yond the reasonable scope of the power conferred upon the city to take the stock. *Van Hostrup* v. *Madison City*, 1 Wall. 291. See, also, *Railroad Co.* v. *Morris*, 84 Ill. 410. Besides, it having been determined, as it was in the *Madison City Case*, that a power to take stock "in a road or roads to the city" is not to be construed "in the most literal and restrictive sense," but as "granted with the obvious idea of enabling the city to promote its commercial and business interests by affording ready and convenient access to it," it seems to me to follow necessarily that the municipality, acting in the prescribed way, must determine for itself whether or not a proposed enterprise is one to which it may lawfully extend aid; and if, in apparent conformity otherwise with the requirements of law, negotiable bonds are issued and put upon the market, good policy in respect to the interests of both municipal debtor and creditor requires that the question whether the project was within the scope of the power should be deemed at rest; certainly so, unless the case be so clear and notorious as to exclude any reasonable pretense that the bonds were purchased in good faith.

If it is proposed and determined, in the legal way, to take stock in a scheme which any tax-payer thinks beyond the scope of the power granted to the city, he may appeal to the courts for an injunction; and if, omitting to seek this remedy, he stands by and permits bonds to be issued, and interest upon them to be paid for years without question, he, rather than the innocent purchaser of the bonds, should suffer the consequences.

The remaining question is more important,—involving the inquiry whether or not the recitals in the bonds are such as to estop the city from resorting to the defense now set up. That the want of a petition of freeholders rendered the bonds invalid in the hands of the original holders, the railroad companies, I suppose is beyond doubt. Such petition was a condition precedent to the right to subscribe for stock, and consequently, the subscription to the stock of the companies being unauthorized and illegal, the bonds issued in payment for the stock were without consideration and illegal. Do the recitals protect an innocent purchaser? The decisions of the supreme court in respect to the force of such recitals are numerous. In *Van Hostrup* v. *Madison City, supra*, where the question now presented was raised, a recital upon their face that the bonds were issued by virtue of a specified ordinance of the common council was held to conclude the city as to any irregularities in carrying into execution the power granted to subscribe for the stock and issue the bonds; the alleged irregularity being the lack of a petition by freeholders to the common council to make the subscription. In *McClure* v. *Township of Oxford*, 94 U. S. 432, it is said:

"Municipal officers cannot rightfully dispense with any of the essential forms of proceedings which the legislature has prescribed for the purpose of investing them with power to act in the matter of such subscription; if they

do, the bonds they issue will be invalid in the hands of all that cannot claim protection as *bona fide* holders. Every dealer in municipal bonds, which upon their face refer to the statute under which they were issued, is bound to take notice of the statute, and of all its requirements."

See, also, in this connection, *Ogden* v. *County of Daviess*, 102 U. S. 634; *Hayes* v. *Holly Springs*, 114 U. S. 120; S. C. 5 Sup. Ct. Rep. 785. In *Hackett* v. *Ottawa*, 99 U. S. 86, recitals of the titles of city ordinances, showing their purpose, were held to excuse the *bona fide* purchaser from further inquiry in respect to the provisions of the ordinances. The decision in *Anthony* v. *County of Jasper*, 101 U. S. 693, upon which some stress has been laid, is hardly in point. It has reference to acts of agents (so called) not authorized to act at all, and not to the force of recitals in instruments executed by officers who, if the recitals were true, were authorized to execute them. In the case of *Buchanan* v. *Litchfield*, 102 U. S. 278, may be found a restatement of earlier cases; among them, *Commissioners of Knox Co.* v. *Aspinwall*, 21 How. 539, in which a recital that bonds were issued in *pursuance* of a statute which prescribed precedent conditions was held to import a compliance with the law; *County of Moultrie* v. *Savings Bank*, 92 U. S. 631, where the words "*in conformity with the provisions*" of a statute were held to have the same effect; and *Marcy* v. *Township of Oswego*, Id. 637, where, adhering to the rule announced in *Town of Coloma* v. *Eaves*, 92 U. S. 484, "the defense was overruled in favor of a *bona fide* holder for value, because of the recital in the bonds that their issue was *by virtue of*, and in *accordance with*, the statute, and in pursuance of, and in accordance with, the vote of three-fifths of the legal voters of the township." In connection with this case, see, also, *School-district* v. *Stone*, 106 U. S. 183; S. C. 1 Sup. Ct. Rep. 84. In the case of *County of Clay* v. *Society for Savings*, 104 U. S. 586, it is said:

"The recital of the bonds that they were issued pursuant to the orders of the board, the successor of the county court, as authorized by virtue of the laws of the state of Illinois, is equivalent to a declaration by the board, upon the face of the bond, that the election had been held, and had resulted so as to authorize the lawful issuing of the bonds."

In *Carroll* v. *Smith*, 111 U. S. 556, S. C. 4 Sup. Ct. Rep. 539, the recitals were held not to constitute an estoppel, because they amounted simply to a "statement that a subscription to the capital stock of the railroad company was authorized by the statutes mentioned, and that the sum mentioned in the bonds was a part of it." "They do not" (says the court) "embody even a general statement that the bonds were issued in pursuance of the statutes referred to." And in *Dixon Co.* v. *Field*, 111 U. S. 83, S. C. 4 Sup. Ct. Rep. 315, it is held that such estoppels can result only from recitals of "matters of fact which the corporate officers had authority by law to determine and certify. It is not necessary, it is true," the court proceeds to say, "that the recital should enumerate each particular fact essential to the exist-

ence of the obligation. A general statement that the bonds have been issued in conformity with the law will suffice, so as to embrace every fact which the officers making the statement are authorized to determine and certify. This is the rule which has been constantly applied by this court in the numerous cases in which it has been involved. The differences in the result of the judgments have depended upon the question whether, in the particular case under consideration, a fair construction of the law authorized the officers issuing the bonds to ascertain, determine, and certify the existence of the facts upon which their power, by the terms of the law, was made to depend, not including, of course, that class of cases in which the controversy related, not to conditions precedent on which the right to act depended, but upon conditions affecting only the mode of exercising a power admitted to have come into being. *Marcy* v. *Township of Oswego,* 92 U. S. 637; *Commissioners of Douglas Co.* v. *Bolles,* 94 U. S. 104; *Commissioners of Marion Co.* v. *Clark,* Id. 278; *County of Warren* v. *Marcy,* 97 U. S. 96; *Pana* v. *Bowler,* 107 U. S. 529; S. C. 2 Sup. Ct. Rep. 704." The statement of the doctrine found in *Coloma* v. *Eaves, supra,* has been often referred to and reaffirmed in the later cases. It is there said:

"Where legislative authority has been given to a municipality, or to its officers, to subscribe for the stock of a railroad company, and to issue municipal bonds in payment, but only on some precedent condition, such as a popular vote favoring the subscription; and where it may be gathered from the legislative enactment that the officers of the municipality were invested with power to decide whether the condition precedent has been complied with,—their recital that it has been made, in the bonds issued by them, and held by a *bona fide* purchaser, is conclusive of the fact, and binding upon the municipality, for the recital is itself a decision of the fact by the appointed tribunal."

In *Railroad Co.* v. *City of Evansville,* 15 Ind. 395, it was held that a railroad is such a road as is embraced in the terms of the charter, and that instead of borrowing money the city might issue its bonds directly to the railroad company in payment for the stock taken.

Under these authorities it seems to me clear that the *bona fide* purchaser of the Evansville, Henderson & Nashville bonds is entitled to protection; the recital being that they were issued "in pursuance of an act of the legislature, and ordinances of the city council of said city passed in pursuance thereof." There being no other valid act of the legislature which could have been intended, it must be presumed that this reference was to the act of 1847. The recital in the other bonds shows in explicit terms that they were issued by virtue of the acts of 1847 and 1867, and of an order for an election, an election held, "and by virtue of a resolution of the city council passed May 23, 1873, ordering the issue of the bonds," etc. The beginning and ending of this recital clearly import a compliance with the law of 1847, and unless the meaning is modified by the other parts, the purchaser of the bonds had a right to rely on the recital as showing that a proper petition of freeholders was presented to the council before the subscription was ordered. It was not presented, however; and the ques-

tion arises: Does the reference to the act of 1867, and the recital that an election was ordered and held in compliance with that law, qualify the meaning of the first and last phrases of the recital to such extent as to put the purchaser of the bonds or coupons upon inquiry in this particular? I am inclined, but somewhat doubtingly, to think not. The purchaser, it is clear, was bound to know that the act of 1867, and the election ordered and held in compliance with it, were void, and that the law of 1847 required a petition of freeholders as a condition precedent to the right of the common council to make such stock subscriptions; but while bound by legal construction to know these things for himself, he, for the same reason, had a right to presume that the common council and officials of the city who ordered and made the bonds had the same knowledge; that they ordered and held the election as matter of precaution merely, and without the omission of any requirement of the act of 1847, as they must have intended to certify, if they acted honestly, as they are presumed to have acted intelligently, in ordering the bonds issued.

But while it is apparent that the law of 1847 was not strictly conformed to, it seems probable that there was a substantial compliance. There is no direct allegation upon the point, but from the exhibits made a part of the declaration it appears that the voters of the city voted with great *unanimity* in favor of subscribing to the stock of the respective railroad companies; the majority in each instance being so large as to make it probable, if not quite certain, that the requisite two-thirds of resident freeholders had voted in favor of the subscription. It appears, too, that the propositions submitted to the voters contained, in substance, the statements and formalities necessary to a proper petition under the act of 1847; and if in fact the proper number of freeholders voted favorably, there was nothing more than a formal failure to comply with the law; the substance was there.

There are, besides, other reasons apparent why the city ought not to escape liability. The contemplated roads were built, and the anticipated benefits have been or will be enjoyed. There has therefore been no failure, either of the consideration for or of the inducements which led to the execution of the bonds. For ten and twelve years the bonds were in the markets, and no question of their validity raised, and, presumably, their credit continually enhanced by prompt payment of interest.

While it is unquestionably true that the payment of interest will not validate a municipal bond issued without authority of law, yet in cases where the objection is not a want of power to issue, but of compliance with a condition, in respect to which there may be an estoppel by recital or other act of the city officials, such payments of interest ought to have, and have been held to have, great weight. In *Portsmouth Savings Bank* v. *Springfield*, 4 Fed. Rep. 276, Judge DRUMMOND said: "All questions of doubt in relation to the validity of these

bonds should be answered in favor of their legality, because the city has recognized their validity repeatedly, and has paid the interest on them for a series of years. Therefore, under such circumstances as these, it should appear beyond all doubt that the issue of the bonds was void." On this point, see, also, *County of Clay* v. *Society for Savings,* 104 U. S. 579.

The demurrer is therefore overruled.