American R. Co. **v.** Feliu.

# AMERICAN RAILROAD COMPANY OF PORTO RICO ET AL.

*v.*

# FRANCISCO FELIU ET AL.

Mayaguez, Equity, No. 787.

### SUIT IN EQUITY FOR SPECIFIC PERFORMANCE.

Porto Rico—Equity.

1. The organic act of April 11, 1900, by its § 34, extends to Porto Rico the provisions of § 2, Article 3, of the Constitution.

Contract—Mortgage Law.

2. The mortgage law of Porto Rico, like the statute of frauds in the common-law states, requires certain forms of conveyance and registration; but this does not prevent the equity jurisdiction from attaching to enforce specifically a contract to convey.

Contract—Certainty.

3. An agreement made at a public meeting to grant a right of way for a railroad across the lands of the subscribers is sufficiently certain to be enforced.

Specific Performance—Statute.

4. There is in Porto Rico no statute which takes the place of the equitable remedy of specific performance.

Jurisdictional Amount.

5. The sworn statement of the complainant in another suit, fixing the value of the property above the jurisdictional amount, estops him from stating otherwise in this court.

Community Property—Old Civil Code.

6. Under the old Civil Code of Porto Rico (1889) the husband was the administrator of the conjugal partnership, and could alienate real and personal property without the consent of the wife.

Opinion filed June 17, 1913.

*Mr. N. B. K. Pettingill* for complainants.

*Mr. B. J. Horton* for defendants.

HAMILTON, Judge, delivered the following opinion:

The documentary evidence introduced by the complainants shows that while La Compañia de los Ferrocarriles de Puerto Rico was building the line of railway now controlled by the American Railroad Company of Porto Rico, one section of the road was planned to pass by Sabana Grande, which was shown by surveys to be the logical route. Property owners near Lajas got together on July 1, 1901, and made propositions for rights of way, which induced the constructing company to relocate its line, and run it near Lajas. In this way the railway actually passed through two pieces of property belonging to the defendant Francisco Feliu. The meeting was presided over by Pedro Santos Vivoni, and a fervent address in favor of the project was made by Francisco Feliu. A resolution was adopted, favoring the new route and promising rights of way, and it was signed by all present, including Feliu. The chairman of the meeting was authorized to convey the result of the meeting to the railroad company, and take such steps as were necessary in the premises. This was done; the said Vivoni and the railroad company made a contract; and under this the road was actually built. The defendant stood by and saw the railroad laid, and only objected to the contractor that certain trees were being cut down, although he admits that none were cut except where the line of the road would necessarily pass. On March 22, 1903, complainant, the American Railroad Company of Porto

American R. Co. v. Feliu.

Rico, assumed charge of the railway, and has since used and operated it. Defendant having informally declined to carry out the above arrangement, a notarial demand was made upon him on August 21, 1904, for compliance with the contract, and to this he made a categorical refusal. Defendant brought suit on the law side of this court for possession of the land covered by the right of way, and under oath alleged its value to be about $9,000.

Complainants have filed this bill on the equity side of the court, asking for specific performance of the alleged contract, and it is resisted on the ground that, under the law contained in the Civil Code of Porto Rico, §§ 637, 638, and 641, the elements of a valid sale of land were not present.

The case brings up the double question whether the Porto Rican statute would control under the constitutional provision that remedies in equity, of course including specific performance, shall be preserved in the Federal courts, and whether the Porto Rican statute inhibits the kind of contract appearing in the facts of this case.

1. In the first place, it is true that all provisions of the Federal Constitution do not apply to Porto Rico, but the organic act of April 11, 1900, expressly gives this court the same jurisdiction as other district courts of the United States. Organic act of Porto Rico, § 34. If there were any question, that applies to this court the provisions of § 2 of article 3 of the Constitution: "The judicial power shall extend to all cases, in law and equity, arising under this Constitution, the laws of the United States." It may well be that a state or a subordinate sovereignty like Porto Rico could by legislation modify the forms in which equitable principles were applied at the time of

the adoption of the Federal Constitution, and this court might adopt this variation, but the right must be substantially retained, and the remedy of this court would be that usual on the equitable side.

2. In the second place, therefore, what is provided by the law of Porto Rico on the subject of such contracts?

A contract, under § 1228 of the Porto Rican Code, has the following requisites:—

"1. The consent of the contracting parties.

"2. A definite object which may be the subject of the contract.

"3. The cause for the obligation which may be established."

Sec. 1238 provides: "All things, even future ones, which are not out of the commerce of man, may be objects of contracts."

It would be difficult to define the subject more broadly. The only question is, Does the law require a form of contract which has not been complied with in this instance? The mortgage law of Porto Rico requires certain forms of conveyance and registration, and there is no question that the informal contract made at the public meeting in this cause was not such a conveyance. This, however, is not the point of the case. If it had been a conveyance, there would have been no suit in the premises. The question is, Was there such a contract or agreement for a conveyance that could be enforced by this court on its equity side?

In passing, it may be noted that the law of Porto Rico is not more strict than what is called the statute of frauds of Great Britain and the states following the common law; nevertheless there has never been any question that a court of equity will enforce a contract made for a valuable consideration, and com-

pel the contracting party to execute such an instrument as will conform to the statute of frauds. Townsend v. Vanderwerker, 160 U. S. 171, 183, 40 L. ed. 383, 387, 16 Sup. Ct. Rep. 258; Williams v. Morris, 95 U. S. 444, 456, 24 L. ed. 360, 362; Whitney v. Hay, 181 U. S. 77, 45 L. ed. 758, 21 Sup. Ct. Rep. 537. The theory of these cases is not that there is a contract conforming to the statute of frauds, but that it would be inequitable for one party to receive the benefit of a contract, and then get out of doing his part because of any informality under that statute.

In Porto Rico, while there is no statute of frauds, there are many provisions as to contracts. Among them may be mentioned § 1245 of the Civil Code, which declares that "contracts shall be binding, whatever may be the form in which they may have been executed, provided the essential conditions required for their validity exist."

Sec. 1246 provides: "Should the law require the execution of an instrument or other special formality in order to make the obligations of a contract binding, the contracting parties may compel each other to comply with said formalities from the moment in which consent and the other requirements necessary for their validity have taken place."

The next section requires that "acts and contracts the object of which is the creation, transmission, modification, or extinction of property rights on real property" must appear in a public instrument, and under the two preceding sections just quoted there appears no reason why the execution of such an instrument should not be enforced in the courts, when a proper contract has been entered into in the premises.

3. It is true the defendant sets up that at the time of this

American R. Co. v. Feliu.

public meeting there was no certainty as to the right of way or where the railroad would run, and consequently that the contract is not valid under § 1228 of the Civil Code. But it was as certain as the nature of the case permitted of, and the parties at the time agreed that it was the proper object of contract. Civil Code of Porto Rico, § 1238. It comes within the general principle that that is certain which can be made certain. Finlay v. Finlay Bros. & W. Trading Co. 8 P. R. R. 371, 389.

4. It does not appear from any law of Porto Rico that there has been an attempt to provide a statutory right which will take the place in any way of the equitable remedy of specific performance. It is now held, therefore, that the remedy applies to this case.

5. The objection is raised, however, that under the evidence in this case the jurisdictional amount has not been proved. In other words, that the value of the land is less than $1,000.

In reply to this, the sworn complaint in the law case of the defendant here is relied upon by the complainant, wherein the value of the property but a short time ago is alleged to have been many dollars in excess of the amount necessary to give this court jurisdiction, and, in the absence of any evidence that the value has changed, it is considered that the defendant is estopped now from denying the value to be over $1,000.

6. The evidence showed that the land was the property of the husband, and as such is a part of the community property provided for in §§ 1310-1347 of the Civil Code. Nevertheless, the Civil Code of 1889, which controlled at the time of the public meeting in question, made the husband administrator and head of the conjugal partnership, and gave him the power of alienation of the real as well as the personal property be-

longing to that partnership, without the wife joining in or consenting to such conveyance. Civil Code of 1889, art. 1413; Trilla v. Smith, 7 P. R. R. 14, 18; Vidal v. Registrar of Property, 12 P. R. R. 198. Of course, a subsequent change of the law could have no effect on the contract, which was already entered into and in the course of execution. Moultrié County v. Rockingham Ten-Cent Sav. Bank, 92 U. S. 631, 635, 23 L. ed. 631, 633.

Upon the whole, therefore, the complainant would seem to be entitled to relief, and a decree will be entered accordingly.